[Sac. No. 7963. In Bank. Apr. 11, 1973.]

JANET BARBARA ROBERTS, Petitioner, v.
THE SUPERIOR COURT OF BUTTE COUNTY, Respondent;
HENRY H. WEIST et al., Real Parties in Interest.

**COUNSEL**

John N. Bach and Maxim N. Bach for Petitioner.

No appearance for Respondent.

Michael J. Conlan and Fitzwilliam, Memering, Stumbos & DeMers for Real Parties in Interest.

**OPINION**

**BURKE, J.**—In this case we are faced with the problem of determining the scope of allowable discovery under the psychotherapist-patient privilege established by Evidence Code section 1014.

Janet Roberts, petitioner, was injured on March 24, 1971, in a collision with an automobile owned and operated by defendants Alice and Henry Weist. She subsequently filed an action for personal injuries alleging that as a proximate cause of defendants' negligence she was "rendered sick, sore, lame, and disabled, and was damaged in the sum of ONE HUNDRED TWENTY FIVE THOUSAND DOLLARS ($125,000.00)."

In due course, defendants served written interrogatories upon petitioner inquiring inter alia whether she had undergone previous illnesses and

institutional confinements during her lifetime and requesting a description of the injuries she claims to have suffered in the collision with defendants' vehicle. In response, petitioner indicated that she had been hospitalized for a prior automobile accident in March or April 1969 and for an overdose of pills in September 1969. Petitioner further stated that she "received psychiatric treatment from Dr. Ernest W. Ely . . . for a few months, but he reported that there was nothing wrong with me. I have no after effects." Petitioner described her injuries from the accident at issue herein as severe pain in the neck and back with accompanying dizzy spells and headaches.

Attached to petitioner's answers to defendants' interrogatories were various reports of the medical doctors who had treated her both before and after the collision with defendants' vehicle. Included were the handwritten notes of David W. Oberlin, M.D., which indicated, in an entry dated November 3, 1970, that petitioner had suffered a backache on and off since September 1969, the date of her attempted suicide.[1] In his formal report to petitioner's counsel, Dr. Oberlin noted that petitioner stated she has "had some mild back pain which began insidiously a few years ago, and whether this is related to or correlated with her previous auto accident I was unable to determine with the material available." Dr. Oberlin made no correlation between petitioner's previous "mild back pain" and her attempted suicide. The doctor diagnosed petitioner's injuries as a "cervical strain, with tenderness out of proportion to the clinical findings."

The report of John R. Clark, M.D., prepared after the accident at issue herein, and addressed to Dr. Oberlin, states that he had "read the reports of Dr. Ely but was impressed that she [petitioner] seems to be making a satisfactory adjustment." Dr. Clark made no reference to petitioner's current back injuries in relationship to her psychiatric treatment. With regard to petitioner's present injuries, Dr. Clark concluded that "this young woman seemed to need some reassurance. In the face of such excellent health and negative neurologic exam, I would recommend no further work-up."

Upon receipt of petitioner's answers and the doctor's reports discussed above, defendants subpoenaed all of petitioner's medical records in the custody of the various doctors who had treated her, including those of Dr. Ely, petitioner's psychotherapist. Dr. Ely refused to surrender his

[1] The relevant statements in Dr. Oberlin's notes are as follows: *"Backache* off & on Sept. 69, almost every night this past week. Less after [?] January. . . . Hosp. Sept. 69 (attempted suicide). Backache since. . . ."

records unless ordered to do so by the court, on the ground that they were privileged. Thereafter, in a letter to the court, defendants requested an ex parte order to compel production by Dr. Ely. The court set the matter on calendar for argument and petitioner filed a memorandum of points and authorities in opposition to the motion. One day prior to the filing of petitioner's memorandum, however, defendants received the medical records of Drs. Clark, Phillip Morgans and Faustino Bernadett, each of which contained reports from Dr. Ely describing petitioner's psychotherapeutic treatment. Defendants removed their pending motion from the court's calendar stating that they would notice a formal motion at a later date.

Although petitioner's counsel failed to object immediately to this disclosure of Dr. Ely's records, eventually an order sealing the copies of the records possessed by defendants and their photocopy service was obtained by petitioner in a separate proceeding. (Roberts v. Conlan, Butte Super. Ct. No. 53864.) Defendants then filed a formal motion to compel production of the records. After a hearing, the motion was granted by the respondent court on the condition that Dr. Ely's records be deposited with the court clerk, open to inspection only by counsel accompanied by their medical examiners.[2]

Upon petitioner's application, we granted an alternative writ of prohibition ordering that Dr. Ely's records be sealed and maintained in the office of the Butte County Clerk pending further order of this court. We have concluded that a peremptory writ of prohibition should issue barring discovery of Dr. Ely's records by defendants and that the records of Dr. Ely should be ordered returned to him.

Before proceeding to the merits of petitioner's claim, however, we must consider the use of the prerogative writ. In *Pacific Tel. & Tel. Co.* v.

[2]The trial court's protective order is as follows:
"IT IS HEREBY ORDERED:
"1. That the original records of Dr. Ernest W. Ely concerning the plaintiff, JANET BARBARA ROBERTS nee WHITE, shall be placed in a sealed envelope and deposited by Dr. Ely with the Butte County Clerk;
"2. That upon receipt of the same the Clerk shall notify counsel that the same have been so received.
"3. That, thereafter, either counsel in person, accompanied by a medical examiner (both parties being properly identified to the Clerk) may open and inspect said sealed records while remaining in the offices of the Butte County Clerk; and
"4. That the Clerk shall keep a record of the date and hours of the inspection and the names and addresses of the person inspecting the same; that this information shall be written on the envelope containing the records; and that upon completion of each inspection, the Clerk, in the presence of the attorney and medical examiner, shall reseal the records in the envelope."

*Superior Court,* 2 Cal.3d 161, 169 [84 Cal.Rptr. 718, 465 P.2d 854], quoting from *Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180, 185-186, footnote 4 [23 Cal.Rptr. 375, 373 P.2d 439], we held that " 'the prerogative writs should only be used in discovery matters to review questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases.' " In footnote 11 of our opinion in *Pacific Tel. & Tel.* (at p. 170), however, we make it clear that an objection to the trial court's grant of discovery on irrelevancy grounds, as was the case in *Pacific Tel. & Tel.,* is of an entirely different nature than a challenge to the grant of discovery when the trial court's order allegedly violates a privilege of the petitioning party. This distinction was set out in *West Pico Furniture Co.* v. *Superior Court,* 56 Cal.2d 407, 415 [15 Cal.Rptr. 119, 364 P.2d 295] (cited with approval in *Pacific Tel. & Tel. Co.* v. *Superior Court, supra,* 2 Cal.3d 161, 170, fn. 11), where, quoting from *Ryan* v. *Superior Court,* 186 Cal.App.2d 813, 816-817 [9 Cal.Rptr. 147], we stated: " 'One of the prime purposes of the Discovery Act is to expedite the trial of the action. This purpose will be defeated if appellate courts entertain petitions for prerogative writs by which a review of the orders of trial courts in discovery proceedings are sought and which do not clearly demonstrate an abuse of discretion by the trial court where discovery is denied, or a *violation of privilege or of the provisions of section 19 of article I of the Constitution of this state, where discovery is granted. . . .'* (Italics added.)"

■ The need for the availability of the prerogative writs in discovery cases where an order of the trial court granting discovery allegedly violates a privilege of the party against whom discovery is granted, is obvious. The person seeking to exercise the privilege must either succumb to the court's order and disclose the privileged information, or subject himself to a charge of contempt for his refusal to obey the court's order pending appeal. The first of these alternatives is hardly an adequate remedy and could lead to disruption of a confidential relationship. The second is clearly inadequate as it would involve the possibility of a jail sentence and additional delay in the principal litigation during review of the contempt order. Thus, the use of the prerogative writ in a case such as this is proper. (See Code Civ. Proc., §§ 1086, 1103.)

We may now turn to the merits.

Evidence Code section 1014 provides in relevant part that, "Subject to Section 912 [waiver of privilege] and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to

disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist if the privilege is claimed by: (a) The holder of the privilege . . . or (c) The person who was the psychotherapist at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure." In *In re Lifschutz,* 2 Cal.3d 415, 423, 431-432 [85 Cal.Rptr. 829, 467 P.2d 557], we pointed out that because of the potential encroachment upon constitutionally protected rights of privacy by the compelled disclosure of confidential communications between the patient and his psychotherapist (cf. *Griswold* v. *Connecticut,* 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]), trial courts should carefully control compelled disclosures in this area. ■ Thus, the psychotherapist-patient privilege is to be liberally construed in favor of the patient. (*Op. cit. supra,* at p. 437.)

Relying on Evidence Code section 1016, defendants first argue that petitioner has waived the privilege by bringing this action in which she claims to have been rendered "sick, sore, lame and disabled." Section 1016, setting out the patient-litigant exception to the psychotherapist-patient privilege, provides in part that, "There is no privilege under this article as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by: (a) The patient; . . ."

In *In re Lifschutz, supra,* 2 Cal.3d 415, 435, we rejected the statutory and constitutional contentions of Dr. Lifschutz that section 1016 did not limit the right of psychotherapists to refuse to disclose confidential information concerning their patients. We noted that under the provisions of section 1016 "a psychotherapist may be compelled to reveal relevant confidences of treatment when the patient tenders his mental or emotional condition in issue in litigation." (Pp. 422-423.) We expressly restricted the scope of section 1016, however, by stating that, "the patient-litigant exception allows only a limited inquiry into the confidences of the psychotherapist-patient relationship, compelling disclosure of only those matters *directly relevant to the nature of the specific 'emotional or mental'* condition which the patient has voluntarily disclosed and tendered in his pleadings or in answer to discovery inquiries." (P. 431; italics added.) Pointing out that the physician-patient privilege "has been generally applied *only to compel disclosure of medical treatment and communication concerning the very injury or impairment that was the subject matter of the litigation,"* we stated that there was "nothing to suggest that in the context of the more liberal psychotherapist-patient privilege this exception should be given a broader reading." (P. 434; italics added.) We also held that even where

the patient files a claim for mental suffering and damage, disclosure can be compelled only with respect to communications which are directly relevant to the specific conditions placed at issue by the patient's pleadings. "Disclosure cannot be compelled with respect to other aspects of the patient-litigant's personality even though they may, in some sense, be 'relevant' to the substantive issues of litigation." (P. 435.)

Recognizing that the patient may alone possess knowledge of the contents of the privileged communications and of the nature of the injuries for which redress is being sought, we also held in *Lifschutz* (at p. 436) that "the burden rests upon the patient initially to submit some showing that a given confidential communication is not directly related to the issue he has tendered to the court." In order to fulfill this burden, the "patient may have to delimit his claimed 'mental or emotional distress' or explain, in general terms, the object of the psychotherapy in order to illustrate that it is not reasonably probable that the psychotherapeutic communications sought are directly relevant to the mental condition that he has placed in issue." (*In re Lifschutz, supra,* 2 Cal.3d 415, 436-437.)

In the instant case, as noted above, petitioner alleged that she was "rendered sick, sore, lame, and disabled as a result of defendants' negligence." There are no allegations in the complaint claiming damages for emotional distress or mental suffering. Furthermore, in her verified petition for the writ of prohibition, and again before us in open court, petitioner states, through her counsel, that she has tendered no issue concerning her mental or emotional condition. In her answers to defendants' interrogatories, petitioner indicated that the injuries for which she claims redress consist of pain in her neck, back and legs.

In addition to so delimiting her claimed injuries, petitioner explained that she had received psychiatric treatment from Dr. Ely for a few months following an overdose of pills. As petitioner pointed out to the trial court, it is significant that neither of the doctors who examined petitioner found any relationship between petitioner's previous psychiatric treatment and her current back problems, even though they both had knowledge of that treatment. On this showing, it cannot be said that it is reasonably probable that the psychotherapeutic communications sought by defendants are directly relevant to a specific mental condition placed in issue by petitioner.

In support of their contention that discovery of Dr. Ely's records should be allowed under section 1016, *supra,* defendants assert that petitioner could be "sore" and "disabled" mentally as well as physically and that since the doctors' reports indicate that petitioner's tenderness is in excess

of that which may be indicated by their clinical findings, there is some indication that her injuries contain a "mental component."

We must of course recognize that any physical injury is likely to have a "mental component" in the form of the pain suffered by the injured person, at least insofar as he is conscious of the physical injury. Presumably, the perception of pain from a particular injury will vary among individuals. Thus, in every lawsuit involving personal injuries, a mental component may be said to be at issue, in that limited sense at least. However, to allow discovery of past psychiatric treatment merely to ascertain whether the patient's past condition may have decreased his tolerance to pain or whether the patient may have discussed with his psychotherapist complaints similar to those to be litigated, would defeat the purpose of the privilege established by section 1014, *supra*.

In rejecting the assertion that section 1016 was an automatic and complete waiver of the psychotherapist-patient privilege, we stated: "If the provision had as broad an effect as is suggested by petitioner, it might effectively deter many psychotherapeutic patients from instituting any general claim for mental suffering and damage out of fear of opening up all past communications to discovery. This result would clearly be an intolerable and overbroad intrusion into the patient's privacy, not sufficiently limited to the legitimate state interest embodied in the provision and would create opportunities for harassment and blackmail." (*In re Lifschutz, supra,* 2 Cal.3d 415, 435.) ■ A fortiori, in a case such as this where there is no specific mental condition of the patient at issue, and discovery of the privileged communications is sought merely upon speculation that there may be a "connection" between the patient's past psychiatric treatment and some "mental component" of his present injury, those communications should remain protected by the privilege of section 1014, *supra*.

The fact that Dr. Oberlin's handwritten notes indicate that petitioner's back pains began around the same time as her hospitalization for an overdose of pills (see fn. 1, *ante*) does not change this result. In speculating that petitioner's back problems were related to the overdose, defendants are drawing a conclusion that neither Dr. Oberlin nor Dr. Clark was willing to draw in his report. Defendants are, of course, not barred from pursuing that issue further and attempting to prove that petitioner's back problems existed prior to her collision with defendants' vehicle. Dr. Oberlin's notes, without more, however, do not make it reasonably probable that the psychotherapeutic communications sought by defendants are directly relevant to a specific mental condition voluntarily placed at issue in the litigation by petitioner.

Defendants further argue that petitioner has waived the psychotherapist-patient privilege through disclosure to them of the nature of the treatment given her by Dr. Ely.

Evidence Code section 912, subdivision (a), upon which defendants rely, provides: "Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section . . . 994 (physician-patient privilege), 1014 (psychotherapist-patient privilege) . . . is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating his consent to the disclosure, including his failure to claim the privilege in any proceeding in which he has the legal standing and opportunity to claim the privilege." Under the terms of this section, the disclosure must reveal a "significant part of the communication" before a waiver will occur. In *In re Lifschutz, supra,* 2 Cal.3d 415, 430, we made it clear that the mere disclosure of the *existence* of the psychotherapist-patient relationship does not reveal a significant part of the communication and thus does not constitute a waiver. Similarly, we do not believe that petitioner's disclosure of the *purpose* of her psychiatric treatment waived the privilege.

In *Lifschutz* we recognized both the extent to which the patient confides in his psychotherapist and the need to protect such confidences from unwarranted intrusion.[3] As noted above, we also held that in order to avoid the application of the patient-litigant exception to the privilege, the patient may be compelled to "explain in general terms, the object of the psychotherapy." (*In re Lifschutz, supra,* 2 Cal.3d 415, 437.) There is, of course, a vast difference between the disclosure of a general description of the object of her psychotherapeutic treatment, and the disclosure of all or a part of the patient's actual communications during psychotherapy. ██ Thus,

---

[3]We stated in *Lifschutz* (p. 431), that "In interpreting this [the patient-litigant] exception we are necessarily mindful of the justifiable expectations of confidentiality that most individuals seeking psychotherapeutic treatment harbor. As has been aptly pointed out by Judge Edgerton in *Taylor* v. *United States* (D.C. Cir. 1955) 222 F.2d 398, 401 (quoting from Guttmacher, M., et al., Psychiatry and the Law (1952) p. 272), ' "The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be. expected of them, and that they cannot get help except on that condition. . . . It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from what they say—may be revealed to the whole world from a witness stand." ' "

in the instant case, we conclude that petitioner did not waive her privilege merely by stating that she received psychiatric treatment from Dr. Ely following an overdose of pills. She has disclosed no more than we suggested in *Lifschutz* as necessary to avoid application of the patient-litigant exception to the psychotherapist-patient privilege.

Defendants also argue that petitioner waived the privilege by reason of the exchange of Dr. Ely's reports with Drs. Phillip Morgans, Faustino Bernadett and John R. Clark and the subsequent disclosure of those reports to defendants.

█ The mere exchange of petitioner's records between Dr. Ely and the other physicians treating her did not constitute a waiver of the psychotherapist-patient privilege. Evidence Code section 912, subdivision (d), provides: "A disclosure in confidence of a communication that is protected by a privilege provided by Section . . . 994 (physician-patient privilege), or 1014 (psychotherapist-patient privilege), when such disclosure is reasonably necessary for the accomplishment of the purpose for which the . . . physician, or psychotherapist was consulted, is not a waiver of the privilege." Defendants refer to all of these doctors as petitioner's "treating physicians" and make no claim that the doctors obtained Dr. Ely's reports in anything other than the normal course of their medical treatment of petitioner.[4] Thus, Dr. Ely's records remained confidential communications while in the hands of Drs. Morgans, Bernadett and Clark.

█ The statutory physician-patient privilege is that of the patient and not that of the physician. (*City & County of S. F.* v. *Superior Court,* 37 Cal.2d 227, 233 [231 P.2d 26, 25 A.L.R.2d 1418].) The physician thus has no power to waive the patient's privilege and, in fact, is under a duty to assert the privilege whenever he is present and a privileged communication is sought to be disclosed. (Evid. Code, § 995.) The same rule applies to the psychotherapist. (Evid. Code, § 1015.) █ Section 912, subdivision (a), *supra,* contemplates a waiver only when the holder of the privilege, i.e., the patient (Evid. Code, §§ 993, 1013), reveals a significant part of the communication, consents to disclosure, or fails to object when he has the opportunity. The disclosure of the communication by the physician or psychotherapist, unless done with the consent of the patient, will not, therefore, constitute a waiver of the privilege under section 912.

---

[4]According to petitioner's answers to defendants' interrogatories Dr. Morgans treated petitioner at the time of her first automobile accident in March or April 1969, and periodically thereafter. Dr. Bernadett was petitioner's personal physician for some time prior to the accident at issue herein. Dr. Clark was the only one of these doctors to treat petitioner after her collision with defendants' vehicle.

Since petitioner had actively asserted the psychotherapist-patient privilege prior to the disclosure of Dr. Ely's reports to defendants by her other physicians, defendants' assertion that the disclosure waived the privilege must be rejected.

■ Petitioner's psychotherapist-patient privilege was properly invoked by Dr. Ely, the psychotherapist, when he refused to release his records to defendants' photocopy service as requested in the subpoena duces tecum. (Evid. Code, §§ 1014, subd. (c), 1015.) The privilege was raised at the first opportunity provided for its assertion.[5] ■ Under California law, upon the refusal of the deponent to produce the documents sought, the burden is upon the party seeking discovery to seek an order from the superior court to compel production. (Code Civ. Proc., § 2034, subd. (a).) There is nothing to require an assertion of the privileged nature of subpoenaed documents prior to a refusal to disclose the documents made in response to the subpoena. Thus, defendants were properly advised of petitioner's invocation of the privilege prior to their receipt of the records of Drs. Morgans, Clark and Bernadett. Consequently, the disclosures made by these doctors cannot be asserted by defendants as a waiver by petitioner of her privilege.

Defendants' final contention is that petitioner waived her psychotherapist-patient privilege by signing the form consent presented her by defendant's insurance carrier six days after her collision with defendants' vehicle.[6]

---

[5]The subpoena duces tecum to require production of documents before trial is issued by the clerk of the superior court upon an affidavit showing good cause therefore. (Code Civ. Proc., § 1985.) There is no provision in this procedure for an adversary hearing on propriety of the issuance of the subpoena. As noted in the text, Code of Civil Procedure section 2034, subdivision (a), contemplates a hearing on a motion filed by the proponent of the discovery *after* the deponent has refused production or to answer a question. For this reason, defendants' additional argument that a waiver occurred because of the failure of petitioner's counsel to object to the production of Dr. Ely's records when the subpoena was originally served upon Dr. Ely is without merit.

[6]The consent form reads as follows:

"To WHOM IT MAY CONCERN:

"You are hereby authorized to furnish to General [?] *Adjustment Bureau or Western Casualty & Surety Company* any reports or information whatsoever they may request regarding the medical history, physical condition and treatment rendered Janet B. White and, if requested, to permit them or any person appointed by them to examine any and all X-ray pictures or records regarding the physical condition of or treatment rendered to Janet B. White photostatic copies of this Authorization carry same Authority as original.

/s/ Janet B. White"

The consent was dated March 30, 1971.

According to petitioner the consent form was signed before she had consulted an attorney.

■ The waiver of an important right must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and likely consequences. (*San Diego County Dept. of Pub. Welfare* v. *Superior Court,* 7 Cal.3d 1, 10 [101 Cal.Rptr. 541, 496 P.2d 453].) ■ Accordingly, a form consent by the patient-litigant waiving her privilege is to be strictly construed against the insurance company supplying the form so that the waiver encompasses only that which clearly appears on its face. (Cf. *Turner* v. *Redwood Mutual Life Assn.,* 13 Cal.App.2d 573, 576-577 [57 P.2d 222].)

The consent form in the instant case authorized the furnishing of any reports or information regarding petitioner's "medical history, physical condition and treatment rendered," and all X-ray pictures or records regarding petitioner's "physical condition" or "treatment rendered." The language of the second clause of this form refers only to records regarding petitioner's physical condition and treatment rendered and therefore does not authorize the release of the records of petitioner's *mental* condition sought by defendants. The first clause of the form, authorizing the furnishing of reports regarding petitioner's "medical history" and "physical condition" does not apply directly to past psychiatric treatment and is thus also insufficient to inform petitioner that she was authorizing an investigation into her past psychiatric treatments. ■ The language of the consent form, plus the circumstance of its having been signed only six days after petitioner's accident involving physical injuries, would thus lead one in petitioner's position to believe that the authorization would apply only to reports and records regarding injuries resulting from the particular accident under investigation by the insurance company which obtained the consent. Therefore, the consent form was insufficient to constitute a waiver of petitioner's psychotherapist-patient privilege. Further, we hesitate to sanction the solicitation of such waivers, which would substantially defeat the privacy afforded by the psychotherapist-patient privilege, and possibly disrupt the confidential relationship sought to be protected in *In re Lifschutz, supra,* 2 Cal.3d 415, 431-438.

The peremptory writ of prohibition barring the production and inspection of the records of Dr. Ernest W. Ely in the hands of the Butte County

Clerk is granted with orders to return to Dr. Ely all of the copies of his records now in the possession of the county clerk.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Devine, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.