[Civ. No. 47970. First Dist., Div. Four. May 5, 1980.]

THELMA BOLING, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
ECONOMY MEDICAL EQUIPMENT COMPANY, INC.,
Real Party in Interest.

**COUNSEL**

Boccardo, Lull, Niland & Bell and John W. Coakley for Petitioner.

No appearance for Respondent.

Campbell, Warburton, Britton, Fitzsimmons & Smith and Albert B. Britton, Jr., for Real Party in Interest.

**OPINION**

**RATTIGAN, J.**—This original proceeding interrupts the pretrial stage of an action pending in respondent court. Petitioner Thelma Boling brought the action to recover damages for the allegedly wrongful death

of her son. Real party in interest Economy Medical Equipment Company, Inc., one of the defendants, moved respondent court for an order requiring a hospital to produce certain records pertaining to the decedent. Petitioner opposed the motion as to parts of the records, claiming the psychotherapist-patient privilege. (Evid. Code, § 1010 et seq.) Respondent court rejected her claim of privilege, granted real party's motion, and filed a formal discovery order directing the hospital to produce all of its records pertaining to the decedent. Plaintiff thereupon petitioned this court for a writ of mandate annulling the order on the ground of the privilege claimed.

Pretrial resort to a prerogative writ is proper in these circumstances. (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 335-336 [107 Cal.Rptr. 309, 508 P.2d 309].) We therefore issued an alternative writ of mandate. Real party in interest has not made a return, but it had previously filed extensive opposition to the petition pursuant to California Rules of Court, rule 56(b). It also appeared at oral argument of the cause. The record made below was fully presented with the petition. We may accordingly proceed with the merits.

The record must be summarized in some detail because it presents statutory and procedural complications which both parties have ignored.

## THE ACTION

The pertinent procedural sequence commenced when petitioner (hereinafter plaintiff) filed an amended complaint in her action. The defendants named in it are Lois Denzer Lundquist (who is not a party to the present proceeding) and real party in interest. The amended complaint pleads five counts, in each of which plaintiff states a cause of action for the wrongful death of Mark Wayne Boling, her son, on November 28, 1978. In the first count, plaintiff charges Lundquist with liability by alleging that her son died as the result of injuries he received in an automobile accident proximately caused by Lundquist's negligence on August 7, 1978.

Each of the remaining four counts charges real party in interest (hereinafter defendant) with liability for the allegedly wrongful death. Plaintiff alleges in each that the decedent had rented a "bed, mattress, sheets and blankets" from defendant for use in his home while he was recovering from injuries he had received in the automobile accident on

August 7, 1978; that defendant had "negligently and carelessly designed, manufactured, tested, inspected,...and installed" the rented bed and bedding, with the result that they were "defective in that they were highly flammable"; that the decedent, "while...reclining upon the bed in his home" on November 28, 1978, was thereby "caused to be entrapped in a fire in the said bed"; and that its "high flammability" directly and proximately resulted in his "burning to death at said time and place." The four counts are otherwise worded to state causes of action against defendant on the respective theories of negligence, strict products liability, and breach of express and implied warranties.

Plaintiff alleges in each of the five counts that she brings the action as the "natural mother" and "sole surviving heir" of the decedent, and that "as a direct and proximate result" of the wrongful conduct charged to the respective defendant she has been "deprived of the care, comfort, society, support, companionship and consortium of her son, Mark Wayne Boling, all to her general damage in an amount within the jurisdictional limits" of respondent court. She does not allege that she is the executrix or administratrix of the decedent's estate.

## DEFENDANT'S MOTION

The full record made on the motion to compel production of hospital records supports the following recitals:

Mark Wayne Boling was admitted to El Camino Hospital on August 7, 1978, for treatment of injuries he had received in the automobile accident which had involved Lundquist on that date. He was discharged from the hospital on a subsequent date not shown. While he was subsequently recovering from his injuries at home, he used a hospital bed that had been rented from defendant. When he was in the bed on November 28, 1978, it caught fire and he was burned to death.

After plaintiff had filed her amended complaint in the wrongful death action, defendant caused El Camino Hospital to be served with a subpoena duces tecum directing it to deliver all its records of the decedent's hospitalization to Robert A. Cook, a notary public, for inspection by defendant and copying. The hospital's custodian of records informed Cook by letter that certain "information" shown in the records would be "withheld" because it was protected against disclosure by Welfare

and Institutions Code section 5328 and the psychotherapist-patient privilege.[1]

The motion to compel production of the records was made after the hospital's response to the subpoena had been communicated to defendant by notary public Cook. Defendant stated in its notice of the motion as follows:

The motion was "for an order requiring plaintiff and El Camino Hospital to produce *all* medical records...pertaining to *all* treatment rendered to Mark Wayne Boling, plaintiff's decedent, at El Camino Hospital,...and to permit inspection and photocopying by the attorneys for defendant[ ] or a representative from Robert A. Cook, Notary Public. [¶] This motion is based on the grounds that these documents, and all of them, constitute or contain evidence material and relevant to this action and that they are not privileged....[¶] [S]aid records are needed in connection with the defense of the pending matter herein and are necessary to the administration of justice." (Italics added.)

The notice of motion was addressed on its face to "plaintiff and to her attorneys of record and to El Camino Hospital," but the record does not show that the moving papers were served on the hospital. Plaintiff filed nothing in opposition to the motion, on which respondent court heard brief oral argument. No appearance was made on behalf of El Camino Hospital. Defendant's attorney argued that the hospital's so-called "psychiatric records" were discoverable because they were not privileged. Plaintiff's attorney had not seen them, and he had no idea what they showed, but he in effect claimed the psychotherapist-patient privilege on the basis of the hospital's view that it applied. (See fn. 1 and the accompanying text, *ante.*) No one mentioned Welfare and Institutions Code section 5328, which the hospital had cited as an alternative basis for nondisclosure of the so-called "psychiatric records." (See *ibid.*) Respondent court accepted defendant's view that the records were not privileged, and granted the motion from the bench.

---

[1]The custodian's letter stated in pertinent part: "Information contained in the hospital...records of Mark Boling is being withheld due to the fact that we have determined such information to be subject to the confidentiality requirement of Section 5328 of the California Welfare and Institutions Code and/or Article 7...of Chapter 4 of Division 8 of the California Evidence Code."

The second citation unmistakably referred to the provisions of the Evidence Code relating to the psychotherapist-patient privilege. (*Id.*, div. 8, ch. 4, art. 7, commencing with § 1010.)

On September 26, 1979, the court filed a formal discovery order entitled "Order For Disclosure Of Information And Records Pursuant To Welfare And Institutions Code § 5328(f)." The order directs that "all original records of El Camino Hospital...relating to plaintiff's decedent, Mark Wayne Boling, be submitted...pursuant to Welfare and Institutions Code § 5328(f) and that they may be in the administration of justice in this case copied by Robert A. Cook, Notary Public..., as representative for defendant...." Plaintiff challenges this order in the present proceeding.

### REVIEW

We have concluded that the discovery order cannot stand on the present record, and that a peremptory writ of mandate must be issued as prayed. Our reasons are stated under the captions enumerated below.

### (1)  *The Psychotherapist-patient Privilege*

The parties pursue the positions expressed by their respective attorneys at the oral argument in respondent court, which was effectively limited to plaintiff's claim of the psychotherapist-patient privilege. It is undisputed that her deceased son was the "patient" for purposes of the privilege. (See Evid. Code, § 1011 [defining "patient"].)[2] Plaintiff claims it, as to El Camino Hospital's "psychiatric records" concerning him, pursuant to section 1014.[3] Defendant stands on its view (and respondent court's) that the decedent's mental condition is relevant because it has been placed in issue by plaintiff's wrongful death action as such, and that the "psychiatric records" are consequently not privileged by reason of the exception provided in section 1016, subdivision (d).[4]

---

[2]Statutory references are to the Evidence Code except where indicated otherwise.

[3]This section provides in pertinent part: "1014. Subject to Section 912 and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist if the privilege is claimed by:

"(a) The holder of the privilege;

"(b) A person who is authorized to claim the privilege by the holder of the privilege; or

"(c) The person who was the psychotherapist at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure...."

[4]This section provides in full as follows: "1016. There is no privilege under this article as to a communication relevant to an issue concerning the mental or emotional

Resolution of this aspect of the proceeding is complicated by the fact that neither party knows what is in the records involved: defendant's attorneys have not been entitled to see them, plaintiff's have not bothered to examine them. Accepting the hospital's word that "information" in them is subject to the psychotherapist-patient privilege (see fn. 1, *ante*), plaintiff necessarily assumes that the "information" includes a record of at least one "confidential communication between patient and psychotherapist" which is protected by the privilege. (See fn. 3, *ante*; see also § 1012 [defining the protected communication].)

Respondent court explicitly assumed that fact at the oral argument on the discovery motion. The fact is fairly shown in the statement of the custodian of records to the notary public (see fn. 1, *ante*), and defendant did not dispute it. Once the existence of pertinent "communications" had been shown in that manner, defendant made no attempt to carry its burden of refuting their confidentiality. (See § 917.) For these reasons, and for present purposes, we conclude that El Camino Hospital's "psychiatric records" concerning the decedent include documentation of "confidential communications" which are subject to the psychotherapist-patient privilege by their nature.

■ We turn to defendant's argument that the privilege does not exist in the present action because of the pertinent exception provided in section 1016, subdivision (d). (See fn. 4, *ante*.) The challenged order reflects respondent court's view that the privilege does not apply because, in the express terms of the statute, the "communications" involved are "relevant to an issue concerning the mental or emotional condition of the patient" which has been "tendered" by plaintiff in "an action brought under Section 376...of the Code of Civil Procedure for damages for the...death of the patient." (See *ibid.*)

This view rests on the premise that plaintiff's commencement of the action operated as an automatic waiver of the privilege. The Supreme Court has rejected the substance of the premise in decisions involving claims of the psychotherapist-patient privilege in actions brought by liv-

---

condition of the patient if such issue has been tendered by:
"(a) The patient;
"(b) Any party claiming through or under the patient;
"(c) Any party claiming as a beneficiary of the patient through a contract to which the patient is or was a party; or
"(d) The plaintiff in an action brought under Section 376 or 377 of the Code of Civil Procedure for damages for the injury or death of the patient."

ing patients. (*In re Lifschutz* (1970) 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *Roberts* v. *Superior Court, supra,* 9 Cal.3d 330; *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766].) The *Lifschutz* court approached the problem by analyzing the medical and social values underlying the privilege. (*In re Lifschutz, supra,* at pp. 431-435.) The court then held as follows: "In light of these considerations, the 'automatic' waiver of privilege contemplated by section 1016 must be construed not as a complete waiver of the privilege but only as a limited waiver concomitant with the purposes of the exception. Under section 1016 disclosure can be compelled only with respect to *those mental conditions* the patient-litigant has 'disclose[d] . . . by bringing an action in which *they* are in issue' [citation]; communications which are not directly relevant to those specific conditions do not fall within the terms of section 1016's exception and therefore remain privileged. Disclosure cannot be compelled with respect to other aspects of the patient-litigant's personality even though they may, in some sense, be 'relevant' to the substantive issues of litigation. The patient thus is not obligated to sacrifice all privacy to seek redress for a specific mental or emotional injury; *the scope of the inquiry permitted depends upon the nature of the injuries which the patient-litigant himself has brought before the court.*" (2 Cal.3d at p. 435 [final italics added; remaining italics in original; fn. omitted].)

Because the actions involved in *Lifschutz, Roberts,* and *Britt* had been brought by living patients who were literally "patient-litigants," these decisions essentially hold that the mere commencement of an action by such a person is not an "automatic waiver" of the psychotherapist-patient privilege pursuant to subdivision (a) of section 1016. (See fn. 4, *ante.*) This case therefore presents the further question whether the decisions command the same result where the patient has died and the action is one defined in subdivision (d) of the statute. (See *ibid.*)

As defendant points out, the nature of plaintiff's wrongful death action suggests a substantial likelihood that she has "tendered" some issues to which the records in question are "relevant," within the meaning of section 1016, subdivision (d), because they will inevitably involve the decedent's mental or emotional condition in his lifetime. Thus far, however, she has "tendered" them in the allegation of general damages she has made in her amended complaint alone. As framed there, they might entail her loss of the decedent's personal "society" and "compan-

ionship" in one direction, or of his economic contribution to her "care" and "support" in another, or combinations and variations of both. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 891, pp. 3180-3181 [scope of damages recoverable for wrongful death].) The open-ended array of these possibilities, at the pleading stage of her action, similarly precludes "automatic," first-instance disregard of the medical and social values which the psychotherapist-patient privilege is uniquely designed to protect. (See *In re Lifschutz, supra,* 2 Cal.3d 415 at pp. 431-435; *Roberts* v. *Superior Court, supra,* 9 Cal.3d 330 at pp. 339-340 and fn. 3; *Britt* v. *Superior Court, supra,* 20 Cal.3d 844 at pp. 863-864.)

The above-quoted reasoning of the *Lifschutz* court speaks to "section 1016" at large, without limitation to any of its subdivisions. (See *In re Lifschutz, supra,* 2 Cal.3d 415 at p. 435.) The recorded history of the pertinent privilege statutes indicates the Legislature's intent to effectuate good cause for the survival of the psychotherapist-patient privilege on the death of the patient, and for its subsequent exercise or waiver as the "interest" of his "estate" might warrant. (See Cal. Law Revision Com. coms. to Evid. Code, §§ 1013 and 993, 29B West's Ann. Evid. Code (1966 ed.) pp. 620, 597-598.) There is accordingly no reason that the mere commencement of an action for his wrongful death should operate as an "automatic waiver" of the privilege. The commencement of plaintiff's action did not in itself have that effect, and the privilege may still be claimed.

According to the present record, however, it has not yet been claimed by anyone with standing to assert it. Section 1014 permits the psychotherapist-patient privilege to be claimed by the "holder of the privilege" (*id.,* subd. (a)), or by a person claiming it with the holder's authorization (subd. (b)), or by the psychotherapist in certain limited circumstances (subd. (c)), but by no one else. (See fn. 4, *ante.*) Petitioner made it clear in respondent court that it was she who was claiming it. She was accordingly required to show that she is the "holder of the privilege" within the meaning of subdivision (a) of section 1014.

For purposes of the psychotherapist-patient privilege, the term "holder of the privilege" is defined in section 1013.[5] Subdivision (c) of that

---

[5]"1013. As used in this article [i.e., the article covering the psychotherapist-patient privilege], 'holder of the privilege' means:

"(a) The patient when he has no guardian or conservator.

section limits the meaning of the term to the "personal representative of the patient" in this case because the "patient" (plaintiff's son) is dead. The term "personal representative of the patient" is not expressly defined in the psychotherapist-patient privilege statutes (see §§ 1010-1028), nor elsewhere in the Evidence Code (see div. 2 [Definitions], commencing with § 100), but pertinent historical sources support the conclusion that the Legislature intended the term to mean the patient's "executor," or "administrator," as those titles would conventionally be used in association with his *estate*. (See Cal. Law Revision Com. com. to Evid. Code, § 953, 29B West's Ann. Evid. Code (1966 ed.) pp. 543-544 [referring to the term "personal representative" in the indistinguishable context of the lawyer-client privilege].) Other sources uniformly construe the term in that sense. (See Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1972) § 38.1, com., p. 654; Witkin, Cal. Evidence (2d ed. 1966) § 798, par. (c), p. 743 [lawyer-client privilege]; see also 33 C.J.S., Executors and Administrators, § 3, pp. 878-879 [defining and discussing the term "personal representative" generally].)

■ Plaintiff did not show that she is the decedent's "personal representative" in that sense. The fact is neither alleged nor imported in her amended complaint. Her attorney casually referred to her as "the personal representative" when he was arguing defendant's motion, but he did not establish that she is her son's executrix or administratrix. She thus failed to show that she was the "holder of the privilege" within the meaning of section 1013, subdivision (c), which meant that she did not validly claim it pursuant to section 1014, subdivision (a).

At that point, however, the records in question remained "subject to a claim of privilege" within the meaning of section 916, subdivision (a), and subject to discovery pursuant to subdivision (b) of that section only.[6] Respondent court was not "instructed" to "permit disclosure" of

---

"(b) A guardian or conservator of the patient when the patient has a guardian or conservator.

"(c) *The personal representative of the patient if the patient is dead*." (Italics added.)

[6]The section provides in full as follows: "916. (a) The presiding officer, on his own motion or on the motion of any party, shall exclude information that is *subject to a claim of privilege* under this division *if*:

"(1) The person from whom the information is sought is not a person authorized to claim the privilege; *and*

"(2) There is no party to the proceeding who is a person authorized to claim the privilege.

the records by any "person authorized" to do so. Defendant (the "proponent of the evidence") made no attempt to establish that there was "no person authorized to claim the privilege in existence."[7] For these reasons in combination, subdivision (b) of section 916 did not apply to permit discovery of the records when plaintiff's claim of the privilege failed.

El Camino Hospital is the "person from whom the information is sought" within the meaning of subdivision (a)(1) of section 916, but it is not a "person authorized to claim the privilege" within that meaning unless it is "authorized . . . by the holder of the privilege." (§ 1014, subd. (b).) Subdivision (a)(1) does not apply because the latter fact was not shown. The hospital was also not a "party to the proceeding" initiated by defendant's motion (see fn. 6, *ante*) because there was no proof that it had been given notice and it did not appear at the hearing. The failure of plaintiff's claim of the privilege consequently meant that there was then "no party to the proceeding who is a person authorized to claim the privilege," and that subdivision (a)(2) did not apply. For failure of either of the conditions it specifies, subdivision (a) operated to reserve the yet-unwaived privilege and to bar the discovery order at that point. The order must therefore be vacated.

This result requires a discussion of possible further proceedings in respondent court because it has the limited effect of preserving the confidentiality of the hospital's "psychiatric records" for the time being, and pursuant to section 916, subdivision (a), only. They may yet be discoverable by defendant if it is established that there is no person in existence who can claim the psychotherapist-patient privilege. (§ 916,

---

"(b) The presiding officer may not exclude information under this section *if:*

"(1) He is otherwise instructed by a person authorized to permit disclosure; *or*

"(2) The proponent of the evidence establishes that there is no person authorized to claim the privilege in existence." (Italics added.)

For purposes of this section, defendant's motion initiated a "proceeding" in which respondent court was the "presiding officer." (See §§ 901, 905.)

[7]Defendant has since filed in this court a declaration, by one of its attorneys, which refers to plaintiff as the "personal representative" of the decedent but charges that her "status" as such is "a sham and a subterfuge" designed to permit her to make a spurious claim of the psychotherapist-patient privilege. The declaration thus purports to tender issues of fact which are not properly raised in this court. (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 167, p. 3931.) It also misapprehends the facts and the law relative to plaintiff's "status" as a "personal representative" for purposes of the privilege, and it entirely misses the point as to whether there is a "person authorized to claim the privilege in existence." (See § 916, subd. (b)(2).) We disregard it for any or all of these reasons.

subd. (b)(2).) A valid claim of the privilege by plaintiff will preclude discovery, unless and until it is shown that the records are "relevant to an issue concerning the mental or emotional condition of the patient" which has been "tendered" in the action (§ 1016, subd. (d)) and which has been *precisely defined* in its course. (See *Britt* v. *Superior Court, supra,* 20 Cal.3d 844 at pp. 863-864.) If plaintiff validly claims the privilege, she will also assume the burden of showing "irrelevancy" of the records—by private ex parte disclosure to respondent court if necessary—as a prerequisite of its continuing protection. (Cf. *In re Lifschutz, supra,* 2 Cal.3d 415 at pp. 436-437; see particularly fn. 23, *ibid.*) If there are further proceedings in any of these directions, both parties will be required to make a better record than the one produced here.

### (2) *Welfare and Institutions Code Section 5328, Subdivision (f)*

This statute provided at pertinent times as follows: "5328. All information and records obtained in the course of providing services under Division 5 (commencing with Section 5000), Division 6 (commencing with Section 6000), or Division 7 (commencing with Section 7000), to either voluntary or involuntary recipients of services shall be confidential. Information and records may be disclosed only:...(f) To the courts, as necessary to the administration of justice."[8]

Defendant effectively acknowledged the statute, and undertook to invoke the subdivision (f) exception, by reciting in the notice of its discovery motion that the records in question were "necessary to the administration of justice." The challenged discovery order explicitly cites the statute and paraphrases the same recital, but neither the statute nor the exception was mentioned at the hearing on the motion. The order is thus based on the mere assumption that the exception automatically applied if respondent court ruled that the records were not protected by the psychotherapist-patient privilege. Our annulment of the discovery order eliminates the effect of the assumption because it voids the ruling.

---

[8]The "Division" references in the statute are to the Welfare and Institutions Code in each instance. The statute thus operates to prohibit the disclosure of "information and records obtained" by institutions, and others, in the course of providing "Community Mental Health Services" (*id.,* div. 5 [the Lanterman-Petris-Short Act]), services in connection with "Admissions and Judicial Commitments to Mental Hospitals and Institutions" (*id.,* div. 6), and services by "Mental Institutions" as such (*id.,* div. 7), except "[t]o the courts, as necessary to the administration of justice."

We are nevertheless again required to discuss possible further proceedings because the assumption was unfounded in this one.

■ Welfare and Institutions Code section 5328 is "a general prohibition against disclosure..., subject to [certain] exceptions," and the prohibition operates independently of any of the privileges established by the Evidence Code. (*In re S.W.* (1978) 79 Cal.App.3d 719, 721 [145 Cal.Rptr. 143].) A ruling that information protected by it is not privileged may therefore mean that its disclosure "[t]o the courts" is "necessary to the administration of justice" within the meaning of subdivision (f) of the statute, but this will only apply as between the parties reached by the ruling.

In the present case, the statute imposes the duty of nondisclosure on El Camino Hospital. Its duty will neither be discharged nor exonerated by a ruling to which it is a stranger. Notice to it, which was apparently not given here, is at least a desirable precaution in any discovery proceedings addressed to its records. (See *Carlton* v. *Superior Court* (1968) 261 Cal.App.2d 282, 286-287 [67 Cal.Rptr. 568].) Such notice is imperative if a discovery order is to be valid under Welfare and Institutions Code section 5328, subdivision (f).

A peremptory writ of mandate will issue commanding respondent court to vacate its discovery order filed September 26, 1979.

Caldecott, P. J., and Christian, J., concurred.