TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL

State of California

JOHN K. VAN DE KAMP

Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 85-302 |
| of | : | FEBRUARY 13, 1986 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| RONALD M. WEISKOFF<br>Deputy Attorney General | : | |

_____

THE HONORABLE GRAY DAVIS, MEMBER OF THE ASSEMBLY, has requested our opinion on the following question:

When a patient in a private nursing home dies are his or her medical records available to private citizens who bear no legal or familial relationship to the deceased who wish to investigate the cause of death?

CONCLUSION

The medical records of a person who dies in a private nursing home are not available to private persons who bear no legal or familial relationship to the deceased who wish to investigate the cause of death.

1

ANALYSIS

Nursing homes in this state are required to maintain a detailed "health record" for each patient which centralizes "all current clinical information pertaining to the patient's stay." (22 Cal. Admin. Code, § 72543, subd. (g).)[1] It goes without saying that such information is extremely personal and is protected within one's "zone of privacy" assured by article I, section 1, of the California Constitution. (*Board of Medical Quality* v. *Gherardini* (1979) 93 Cal.App.3d 669, 678-679; *Wood* v. *Superior Court* (1985) 166 Cal.App.3d 1138, 1145, 1147; *Board of Medical Quality Assurance* v. *Hazel Hawkins Memorial Hospital* (1982) 135 Cal.App.3d 561, 565; but see *id.*, at 566, fn. 7.) Thus, while alive, a patient in a nursing home knows that his or her records will be kept confidential and disclosed only to authorized persons in accordance with law. (Cf. 22 Cal. Admin. Code, §§ 72527(a)(9), 72543(b).)

We are asked whether a private group that monitors the practices of nursing homes may have access to such patient records to investigate the cause(s) of death of patients who have died in order to determine whether anything improper has occurred, and, if so, to report that to the appropriate authorities.[2] We are told that no one has given approval for such undertaking. The issue thus is whether private citizens who bear no legal or familial relation to deceased patients have a right to review their medical records. We conclude they do not.

The California Legislature has been solicitous of protecting the privacy of one's medical information and for controlling its dissemination, and so several statutory enactments preserve the confidentiality of that information while a person is alive and after he or she dies. (Cf. 53 Ops.Cal.Atty.Gen. 136, 147.) Foremost among them are (1) the provisions of the Confidentiality of Medical Information Act (Civ. Code, pt. 2.6, § 56 et seq.) and (2) the provisions of the Evidence Code that define and effect a physician-

---

[1] The information required to be kept includes: an admission record, a current report of physical examination, current diagnoses, physician's orders (including drugs and treatment), progress notes, nurse's notes and progress notes, nurse assistants' records of patient care and treatment and observation, records of administration of drugs and medications; a record of any restraints imposed, documentation of oxygen administration, laboratory reports of all tests prescribed and completed, dietary records, a record of therapy treatment, and the patient's condition and diagnosis at discharge or final disposition. (22 Cal. Admin. Code, § 72547.)

[2] Nursing homes must already report all patient deaths to the Department of Health. (22 Cal. Admin. Code, § 72549, subd. (a.).) In addition, any person may file a complaint to request an inspection of a nursing home by the Department (Health & Saf. Code, § 1419) which must make an on-site inspection or investigation within 10 days unless it finds that the complaint was filed to harass the licensee or is without any reasonable basis (*id.*, § 1420; cf. *id.*, § 1421).

patient privilege (Evid. Code, div. 2, ch. 4, art. 6, §§ 990-1007). We discuss each of these in turn.

### 1. The Confidentiality of Medical Information Act

In 1979 the Legislature enacted the Confidentiality of Medical Information Act to govern the release and dissemination of one's "medical information."

The term "medical information" is broadly defined as "any individually identifiable information in possession of . . . a provider of health care regarding a patient's medical history, mental or physical condition, or treatment" (§ 56.05, subd. (b)), and being so would embrace the information contained in the patient records that would be sought herein. (Cf. 22 Cal. Admin. Code, §§ 72543(g), 72547.)

Under section 56.10, subdivision (a) of the Act, a nursing home, as a provider of health care (cf. § 56.05, subd. (d)), may not "disclose medical information regarding a patient . . . without first obtaining an authorization. . . ." (§ 56.10(a).)[3] Since "patient" is defined as "any natural person, whether or not still living, who received health care services from a provider . . . and to whom medical information pertains" (§ 56.05, subd. (c)), its protection applies equally to the deceased as well as the living patient.

---

[3] The subdivision recognizes many exceptions such as the mandatory disclosure of medical information when compelled by appropriate authority (§ 56.10, subd. (b)), and its discretionary disclosure to certain entities (*id.*, subd. (c)). None of these or any other exception is pertinent to the situation presented herein. For example, no authorization is necessary for a provider of health care to disclose medical information where the disclosure is compelled by an administrative agency for purposes of adjudication (§ 56.10, subd. (b)(4)), or by a search warrant lawfully issued to a government law enforcement agency (*id.*, subd. (b)(6)). Similarly, a provider of health care without an authorization may disclose information to a governmental entity responsible for paying for health care services rendered to the patient to the extent necessary to allow responsibility for payment to be determined and payment to be made. (§ 56.10, subd. (c)(2)). With like purport, the physician-patient privilege set forth in the Evidence Code will not protect a patient's medical records from being disclosed where a criminal proceeding is involved (Evid. Code, § 998), where information is required to or reported to a public employee or recorded in a public office (*id.*, § 1006) or where a "proceeding is brought by a public entity to determine whether a right, authority, license, or privilege . . . should be revoked . . . ." (*Id.*, § 1007; but see *Board of Medical Quality Assurance* v. *Hawkins* (1982) 135 Cal.App.3d 561; *Pating* v. *Board of Medical Quality Assurance* (1982) 130 Cal.App.3d 608; *Division of Medical Quality* v. *Gherardini* (1979) 93 Cal.App.3d 669.)

3

In order for the necessary authorization for a release of medical information to be valid, it *must* follow the dictates of section 56.11 which prescribes its content and form.  (§ 56.11; cf. § 56.05, subd. (a).)  One of the specifications set forth therein is that an authorization be -

"(c) . . . signed and dated by one of the following

"(1) The patient . . .

"(2) The legal representative of the patient, if the patient is a minor or an incompetent . . .

"(3) The spouse of the patient or the person financially responsible for the patient . . . [for limited purposes].

"(4) The beneficiary or personal representative of a deceased patient."  (§ 56.11, subd. (c).)

Under the Confidentiality of Medical Information Act then, the positive consent of a deceased's personal representative or beneficiary is a *sine qua non* for the release of the deceased's medical information.  (§§ 56.10, 56.11; cf. § 56.05, subd. (a).)[4]  Without that consent actually in hand there can be no release of such information.

A California health facility, such as a nursing home, is obligated to assure the confidentiality of the personal and medical records of its charges and to approve the release of such information to individuals outside the facility only in accordance with federal, state or local law.  (Tit. 22, Cal. Admin. Code, §§ 72527(a)(9), 72543 (b).)  The Confidentiality of Medical Information Act prohibits a provider of health care, in this case the private nursing home, from disclosing medical information regarding a patient without the requestor first having obtained the prescribed signed authorization for that information to be released.  We are told that no one has given the persons seeking the records herein any authorization for such disclosure.  Since those persons do not fit any of the categories which would exempt them from fulfilling the requirement that the

---

[4] The term "personal representative" ordinarily refers either to an "executor" or to an "administrator."  (*Kropp* v. *Sterling Sav. & Loan Assn.* (1970) 9 Cal.App.3d 1033, 1042, citing Black's Law Dict. (4th ed. 1951) at 1466; see also 24 Cal.Jur.3d, *Decedent's Estates*, § 82.)  In some contexts though, it can have a broader meaning and include heirs, next of kin, descendants, assignees, grantees, receivers, and trustees in insolvency.  (*Ibid.*)  We need not decide the scope of its meaning vis-a-vis section 56.10 because in the situation herein, no one has authorized the release of any medical information.

4

required authorization actually be obtained (see fn. 3, *ante*), the nursing home is bound to refuse to release the deceased patient's records to them. In other words, the medical records being sought would not be available to private persons who wish to investigate the cause of the patient's death.

## 2.    The Physician-Patient Privilege

The physician-patient privilege found in the Evidence Code gives a patient the right to refuse to disclose, or prevent any other person from disclosing, the contents of his "confidential communications" with a person he believed to be authorized to practice medicine. (Evid. Code, §§ 990-994; *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 341 ("The . . . privilege is that of the patient. . .").) The privilege would attach to those patient records maintained by a nursing home which memorialize such "confidential communications" between patient and physician. As defined by section 992 of the Evidence Code that would be:

> ". . . information, including information obtained by an examination of the patient, transmitted between a patient and his physician in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the physician is consulted, and includes a diagnosis made and the advice given by the physician in the course of that relationship." (Evid. Code, § 992.)[5]

---

[5] We need not pigeon-hole the many particular types of above-described records kept by a nursing home as part of its patient profile within this definition. Suffice it to say, since the physician-patient privilege covers one who consults or submits to an examination by a physician "for the purpose of securing a diagnosis or preventive, palliative, or curative treatment of his physical or mental or emotional condition" (Evid. Code, § 991 defining "patient") and since it covers advice given by the physician in the course of that relationship, the matters made privileged thereby would include all of a physician's records and notes regarding a patient, all records made by others of the physician's actions and orders and all records of treatment rendered upon them. (Cf. *Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924, 930-931, 933; *Wood* v. *Superior Court, supra* 166 Cal.App.3d at 1147; cf. *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 340-342; *Blue Cross* v. *Superior Court* (1976) 61 Cal.App.3d 798, 800; *Carlton* v. *Superior Court* ((1968) 261 Cal.App.2d 282 (privilege to be liberally construed); *Kramer* v. *Policy Holders Life Ins. Assn.* (1935) 5 Cal.App.2d 380, 385 (ditto).)

Section 994 of the Evidence Code establishes the privileged status of such information[6] thus:

> "Subject to Section 912 [[7]] and except as otherwise provided in this article[[8]], the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and physician if the privilege is claimed by:

> "(a) The holder of the privilege;

> "(b) A person who is authorized to claim the privilege by the holder of the privilege; or

> "(c) The person who was the physician at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure."

While a patient is alive then, section 994 limits the right to claim the physician-patient privilege to: (1) its "holder," i.e., the patient himself or his guardian or conservator;[9] (2) a

---

[6] At common law communications between physician and patient were not privileged. (*Frederick* v. *Federal Life Ins. Co.* (1936) 13 Cal.App.2d 585, 591; *Kramer* v. *Policy Holders Life Ins. Assn., supra*, 5 Cal.App.2d at 384.) We need not discuss herein the extent to which their being so is now constitutionally secured. (Compare *Division of Medical Quality* v. *Gherardini* (1979) 93 Cal.App.3d 669, 678-679 and *Wood* v. *Superior Court* ((1985) 166 Cal.App.3d 1138, 1147, with *Board of Medical Quality Assurance* v. *Hawkins* (1982) 135 Cal.App.3d 561, 566, fn. 7.)

[7] Section 912 provides that the physician-patient privilege is waived when the holder, without coercion, has disclosed or consented to disclosure of a significant part of a communication protected by it. (*Id.*, subd. (a).) However a disclosure in confidence of a protected communication that is "reasonably necessary for the accomplishment of the purpose for which the . . . physician . . . was consulted, is not a waiver of the privilege." (*Id.*, subd. (d).)

[8] Sections 996 through 1007 set forth specific situations in which the physician-patient privilege is not available. None of them is applicable herein.

[9] Section 993 defines "holder of the privilege" as follows:

"As used in this article, 'holder of the privilege' means:

"(a) The patient when he has no guardian or conservator.

"(b) A guardian or conservator of the patient when the patient has a guardian or conservator.

6

person authorized to claim the privilege by the holder; or (3) the physician who received the confidential communication.[10] (*Rudnick* v. *Superior Court, supra,* 11 Cal.3d at 929.)

In *Rudnick* v. *Superior Court* though, the court focused on the similar phraseology contained in the definition of "confidential communication" found in section 992 ("information obtained . . . in confidence by a means which . . . discloses the information to no third person other than those . . . to whom disclosure is reasonably necessary for . . . the accomplishment of the purpose for which the physician was consulted . . .") and the proviso found in section 912, subdivision (d), that the physician-patient privilege is not waived where "disclosure [of a confidential communication] is reasonably necessary for the accomplishment of the purpose for which the . . . physician was consulted", and held that a third person to whom such a disclosure of confidential information is made may claim the physician-privilege on behalf of the patient. (11 Cal.3d at 932, 933-934.)  Said the court:

> "We therefore hold that a disclosure in confidence by a physician, with or without the consent of the patient, of communications protected by the physician-patient privilege to a third person to whom disclosure is reasonably necessary for the accomplishment of the purpose for which the physician is consulted confers upon the third person the right to claim the physician-patient privilege on behalf of the patient.  In other words, that third person thereby becomes '[a] person who is authorized to claim the privilege by the holder of the privilege' within the meaning of section 994." (11 Cal.3d at 932.)

It was held accordingly in that case that a pharmaceutical company could claim the physician-patient privilege on behalf of patients to bar discovery of adverse drug reaction reports that were submitted by their physicians, where the reports were submitted in confidence by the physicians involved and the submission was reasonably necessary to accomplish the purpose for which consultation was made. (*Id.,* at 933-934.)  (Accord, *Blue Cross* v. *Superior Court, supra,* 61 Cal.App.3d at 801 (prepaid health plan need not disclose claim files with patient's identities and ailments because that privileged

---

"(c) The personal representative of the patient if the patient is dead."

[10] Indeed, unless instructed otherwise by one authorized to do so, the physician must protect a confidential patient-physician communication and assert the privilege on behalf of the absent patient. (Evid. Code, § 995 ("The physician . . . shall claim the privilege whenever he is present when the communication is sought to be disclosed. . ."); Bus. & Prof. Code, § 2263 ("The willful, unauthorized violation of professional confidence constitutes unprofessional conduct"); *Roberts* v. *Superior Court, supra,* 9 Cal.3d at 341; *Marcus* v. *Superior Court* (1971) 18 Cal.App.3d 22, 24.)

7

information was imparted for the purpose of paying the doctor's fees and was therefore reasonably necessary to achieve the purpose for which the physician was consulted).)

In *Board of Medical Quality Assurance* v. *Gherardini*, *supra*, 93 Cal.App.3d 669, the court, on the authority of *Rudnick*, held that a hospital, "a third party custodian of privileged matter, ha[d] standing to assert the statutory privilege on behalf of the absent nonconsenting patient." (*Id.*, at 675; accord, *Roberts* v. *Superior Court*, *supra*, 9 Cal.3d at 341.) A nursing home would have the same standing to assert the privilege on behalf of their absent nonconsenting patients. But what of that authority with respect to those patients who have died. Is there a privilege left for the home to assert?

It is clear that when a patient dies, the physician-patient privilege continues to exist, for a time at least with the deceased's "personal representative" the holder of the privilege. (Evid. Code, § 993, subd. (c), fn. 9, *ante*; cf. fn. 4, *ante*.) While he or she functions as such, a physician to whom a privileged communication was made continues to have an obligation to claim the privilege on behalf of the deceased unless instructed otherwise. (Evid. Code, §§ 995, 994, subd. (c).) By extension, the third party recipients of privileged patient medical information to whom it was necessarily imparted to achieve the purpose for which the patient had consulted the physician, would continue to have the same obligation to claim the privilege on behalf of the deceased patient.[11] Again this category would include a nursing home which cared for and treated a patient pursuant to physician's orders. (*Board of Medical Quality Assurance* v. *Gherardini*, *supra*, 93 Cal.App.3d 669; cf. *Rudnick* v. *Superior Court*, *supra*, 11 Cal.3d 924.)

Since "there can be no discovery of matter which is privileged" (*Rudnick* v. *Superior Court*, *supra*, 11 Cal.3d at 929), this much then is certain: to the extent that the medical records sought by the private parties herein involve "confidential communications" between the deceased and his or her physician(s), they could not be obtained from a nursing home in face of opposition by the deceased's personal representative. A posthumous privilege protecting them would still exist and if its new holder "does not consent by word or deed to . . . disclosure [it is] not waived. . . ." (*Id.*, at

---

[11] Needless to say the key actor vis-a-vis the posthumous privilege is the personal representative for only he or she may waive it. The Evidence Code provides that the physician *must* claim the privilege *unless* the personal representative instructs otherwise (Evid. Code, §§ 995, 993(c); see fn. 10, *ante*) and for that protection to be meaningful, those third parties to whom a physician disclosed "confidential communications" as a necessity would also be required to exercise their derivative right and claim the privilege unless so instructed. (Cf. *Rudnick* v. *Superior Court*, *supra*, 11 Cal.3d at 931 & 931, fn. 2, quoting official comment to § 912(d) by the Senate Committee on Judiciary; *Roberts* v. *Superior Court*, *supra*, 9 Cal.3d at 341.)

932-933.)  Again, we are told that no one has consented to the private group's obtaining the deceased patient's records.  While the physician-patient privilege is still viable,[12] it too would prevent them from doing so.

We therefore conclude that the medical records of a person who dies in a private nursing home are not available to private persons who bear no legal or familial relationship to the deceased who wish to investigate the cause of death.

*****

---

[12] *After* an estate has been distributed and the personal representative discharged there no longer would be a "holder" to claim and force claim of the privilege.  (§ 994, and see Witkin, *California Evidence*, § 849 (2d ed. 1966) at 789, citing Law Rev. Comm. *Comment* to Evid. Code, § 993; but see 6 Cal. Law Revision Comm's Rep. 408-410 (1964).)