Filed 2/4/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DARAB N., | B282972 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BF057903) |
| v. | |
| MAYA OLIVERA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christine Byrd, Judge. Affirmed.

Jackie A. Abboud for Defendant and Appellant.

Law Offices of Peter A. Lauzon, Peter A. Lauzon, and Nathalie E. Amir for Plaintiff and Respondent.

_____

Maya Olivera (Maya) appeals from a trial court judgment, an order denying her request from relief from default under Code of Civil Procedure section 473, subdivision (b), two orders granting motions to quash subpoenas filed by Darab Cody N. (Cody), and an order denying her request under Family Code section 7605 that Cody pay her attorney fees.[1]  Because we find no error in the trial court's orders, we affirm.

## BACKGROUND

In August 2015, Maya gave birth to her and Cody's daughter, N.N.[2]  When she was born, N. had heroin in her system, and the Los Angeles County Department of Children and Family Services (DCFS) detained her.

The DCFS proceeding was eventually dismissed.  But in October 2016, Maya relapsed and checked into a rehabilitation and detox center.  Maya completed her treatment on October 28, 2016, but was smoking heroin in N.'s presence the next day.

Cody filed a petition to establish parental relationship on November 16, 2016, requesting sole legal and physical custody of N.  The petition requested that Maya have monitored visitation and that she submit to drug and alcohol testing.  Cody requested

---

[1] We refer to the parties by their first names for ease of reading.

[2] Cody and Maya were never married.  The couple signed a "Declaration of Domestic Partnership" for purposes of health insurance coverage on a form with a San Manuel Band of Mission Indians header.  The form explains that the "domestic partnership shall be terminated if," among other potentially terminating events, the parties "no longer share a common residence."  Presumably, then, when Cody and Maya no longer shared a common residence, their San Manuel Band of Mission Indians domestic partnership agreement terminated.

2

that the trial court enter orders on an ex parte basis; Maya represented herself at the hearing. The trial court awarded temporary sole legal and physical custody to Cody, ordered Maya to have monitored visitation in her home three times a week for four hours each visit, and ordered Maya to respond to the petition no later than December 1, 2016.

On November 30, 2016, Jackie Abboud substituted in as counsel for Maya, replacing Maya's previous counsel. On December 2, Cody's attorney spoke with Abboud on the telephone and requested that Abboud file a response to Cody's petition.

The parties entered into a stipulation and order on December 20, 2016, that modified the trial court's November 22 order entered on Cody's ex parte application. The December 20 order left sole legal and physical custody with Cody, kept Maya's visitation the same, but increased her drug and alcohol monitoring obligations. Cody also agreed to pay Maya an advance on child support and to pay $3,000 per month in child support from December 1, 2016 to May 31, 2017.

Cody's counsel e-mailed Abboud on January 5, 2017 to request that Abboud file a response to Cody's petition. On January 6, 2017, Cody's counsel again requested by telephone that Abboud file a response to the petition. On January 11, 2017, Cody filed a request to enter Maya's default; the trial court entered Maya's default the same day.

Abboud wrote to Cody's counsel on January 20, 2017, requesting that Cody's counsel sign a stipulation and proposed order to set aside the default. Abboud wrote: "As Maya had two attorneys before, I was not aware that no [r]esponse was filed." Cody's counsel did not stipulate to set aside the default, and on February 15, 2017, Abboud wrote to Cody's counsel that she

3

would file an ex parte application on February 21, 2017 asking the trial court to set aside the default and sanction Cody's counsel under Family Code section 271. In her declaration in support of the ex parte application, Abboud wrote: "As [Abboud] substituted into the case after two other attorneys had been involved in the case, [Abboud] believed that a Response to [Cody's] Petition had been filed."

At the February 21, 2017 hearing, the trial court denied the ex parte application to set aside the default and denied the request for sanctions without prejudice to the request being refiled for hearing on proper notice. The trial court's order contained the following handwritten notation: "Denied without prejudice. Parties to file a noticed motion. The parties are to comply with Judge Nelson's 11/22/16 orders that includes that neither party is to be under the influence of drugs or alcohol in the presence of the minor child." Upon reviewing the trial court's handwritten notation, Abboud explained that she believed the trial court had modified the custody and visitation orders back to the November 22, 2016 orders (rather than the parties' stipulated December 20, 2016 orders). Cody's counsel informed Abboud that she would be staying in the courtroom to request clarification from the trial court; Abboud left. Cody's counsel never spoke to the trial court, but through its clerk, the trial court issued an order with additional language added to the handwritten notation: "All terms and orders in 12/12/16 stipulation and order and those in 11/22/16 order not modified by 12/12/16 order remain in full effect."[3]

---

[3] "12/12/16 order" refers to the December 20, 2016 stipulation and order. The parties dated the stipulation

After the February 21, 2017 hearing (and before she was aware the trial court had added language to its February 21, 2017 order), Abboud filed her motion to be heard on regular notice, and added a request for payment of $50,000 from Cody to Maya to finance her attorney fees. On the parties' stipulation, the trial court entered an order on February 22, 2017 modifying the parties' December 20, 2016 order to require Cody to pay two of the child support payments outlined in the December 20, 2016 order directly to a rehabilitation facility in Mexico on Maya's behalf.

After receiving the trial court's order with the additional handwriting on it clarifying that the parties' December 20, 2016 stipulation and order was also still in effect, Abboud notified Cody's counsel that she would be appearing on February 23, 2017 to apply ex parte for an order reconsidering the trial court's February 21, 2017 orders, for sanctions, and for an order disqualifying the judicial officer who issued the February 21, 2017 orders. On February 23, the trial court granted the motion for reconsideration and "re-adopt[ed] its modified February 21, 2017 Order in whole including the sentence the Court had added to that order . . . ." The trial court denied the remainder of the ex parte application.

As part of the parties' stipulation, Maya was subject to random drug tests and Soberlink alcohol monitoring at Cody's expense. Maya was noticed to appear for drug testing a total of 29 times. According to the manager of the drug testing facility Maya was to test at, "She tested once, didn't appear 23 times, and failed to provide a specimen five times." The one time she

December 12, 2016; the trial court signed the order on December 20, 2016.

5

tested—December 19, 2016—she tested positive for heroin and morphine.

Overnight from March 2 to 3, 2017, while the trial court proceedings were pending, Maya jumped the fence surrounding Cody's home, entered the home, and confronted a guest of Cody's asleep in one of the home's guest rooms. Neither Cody nor N. were at the home during the confrontation; Maya demanded to know where they were and the guest refused to tell her. Maya returned to Cody's home the next morning. When Cody refused to answer the door, Maya threw an empty bottle at the home four times, making contact with a window twice, and breaking the window. Based on Maya's increasingly threatening behavior, Cody filed a request for a domestic violence restraining order (DVRO) on March 7, 2017.

On March 8, 2017, Maya served subpoenas on VISIONS Adolescent Treatment Centers, which she contends treated Cody for drug abuse when he was a teenager, and Cedars-Sinai Medical Center, which she contends treated Cody on more than one occasion for seizures that Maya contends "were most likely caused by his excessive use of marijuana." Cody moved on March 20, 2017 to quash both subpoenas and for an award of attorney fees for having to bring the motions to quash. In response to the motions to quash, Maya increased her request for attorney fees from $50,000 to $100,000.

On April 11, 2017, the trial court entered a three-year DVRO for Cody and N. against Maya.

On April 19, 2017, the trial court heard Maya's motion to set aside the default, Maya's sanctions request in connection with the motion to set aside the default, Cody's motions to quash the two subpoenas regarding his medical treatments, and Maya's

6

additional requests regarding custody, visitation, child support, and $100,000 in attorney fees.  The trial court denied Maya's motion to set aside the default and the related request for sanctions, granted Cody's motions to quash the VISIONS and Cedars-Sinai subpoenas, and denied Maya's additional requests, including her request that Cody be ordered to finance her attorney fees.

On May 30, 2017, the trial court entered judgment based on its prior orders.  Maya filed a timely notice of appeal.

## DISCUSSION

**1.    Request to Set Aside Default**

Maya contends the trial court erred in refusing to set aside the default entered after she failed to respond to Cody's petition.  Maya argues that under Code of Civil Procedure section 473, subdivision (b), the trial court was required to set aside the default based on Abboud's claim that she was unaware no response to the petition had been filed.  Maya argues that "a court has no discretion to deny a request to set aside a default where that request [under section 473, subdivision (b)] is accompanied by a declaration from the attorney attesting to her mistake."  Because Abboud attested to her mistake here, Maya contends, the trial court's denial of her request to set aside the default was error.

Cody counters that the trial court determined that Abboud's declaration was not credible, and in fact found that Abboud's mistake was not the cause of the entry of default.  Cody argues that the statutory language allows the trial court to make that finding and to thereupon deny relief under Code of Civil Procedure section 473, subdivision (b).  Substantial evidence supports the trial court's credibility determination and factual

7

finding, according to Cody.  Consequently, Cody contends, the trial court did not abuse its discretion when it denied Maya's request to set aside the entry of default.

Code of Civil Procedure section 473, subdivision (b) provides in pertinent part:  "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."  "The court's determination of whether the default was caused by the attorney's mistake, inadvertence, surprise, or neglect is in part a credibility determination.  [Citation.] 'Credibility is an issue for the fact finder . . . . we do not reweigh evidence or reassess the credibility of witnesses.' " (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915.)

The trial court's detailed order explains that counsel for Cody requested—twice by telephone and once in writing—Abboud to file a response to Cody's petition, all before filing Cody's request for entry of default.  The trial court's order stated: "Here the Court finds that Ms. Abboud's mistaken belief [that a response had been filed] in November, when she entered the case, did not cause the default to be entered in January.  The chain of causation was broken when [Cody's] counsel notified Ms. Abboud that there was no Response and asked her to provide one.  Only

8

when Ms. Abboud had been notified two or even three times and still refused to file a Response did [Cody] proceed with a request that default be entered." Based on the evidence in the record, we have no basis to disturb the trial court's finding on appeal.

Code of Civil Procedure section 473, subdivision (b)'s mandatory provision is only mandatory "unless the [trial] court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." Here, the trial court found exactly that, and did not abuse its discretion in so doing.

## 2. Cody's Motions to Quash VISIONS and Cedars-Sinai Subpoenas

Maya contends that the trial court erred when it granted Cody's motions to quash the VISIONS and Cedars-Sinai subpoenas because, (a) Cody tendered the issue of his drug abuse by filing his petition, and (b) Cody waived any privilege about his medical treatments by discussing drug use and abuse and his treatment with Maya.

Cody contends that he never tendered the issue of his own drug use or abuse, and therefore has not implicated the tender doctrine. He also argues that even if he disclosed the information Maya claims he disclosed—the existence of privileged communications (but not their substance) and a general description of his treatment at VISIONS and Cedars-Sinai—that disclosure is insufficient to waive either the physician-patient or psychotherapist-patient privilege. We agree with Cody.

*Koshman v. Superior Court* (1980) 111 Cal.App.3d 294 (*Koshman*) establishes that the tender doctrine, codified at Evidence Code sections 996 and 1016, "compels disclosure only in cases in which the patient's own action initiates the exposure."

9

(*Koshman*, at p. 298.) The physician-patient and psychotherapist-patient privileges apply in custody disputes between parents. (See *id.* at p. 297.)

In *Koshman*, a custody dispute, father sought certain of mother's medical records, claiming that she had been hospitalized for treatment for an overdose of narcotics "and thus the records were vital to determine whether or not she was fit to have custody of the children." (*Koshman*, *supra*, 111 Cal.App.3d at p. 296.) The *Koshman* court determined that it was *father* who had tendered the issue implicating mother's medical records, *not mother*, and mother was therefore entitled to quash father's subpoena. There is no functional difference between *Koshman* and this case; *Maya* attempted to tender Cody's medical issues, not Cody.

Neither do Maya's assertions of the information Cody shared with her about her treatment, or her accompaniment of him to medical appointments that she does not identify constitute a waiver of either the physician-patient or psychotherapist-patient privileges. (See *Roberts v. Superior Court* (1973) 9 Cal.3d 330, 340.) "[T]he mere disclosure of the *existence* of the . . . relationship [from which the privilege emanates] does not reveal a significant part of the communication and thus does not constitute a waiver. Similarly, we do not believe . . . [the] disclosure of the *purpose* of . . . treatment waived the privilege." (*Ibid.*)

The trial court did not abuse its discretion by granting Cody's motions to quash.

3.  **Maya's Request for $100,000 in Attorney Fees**

Maya contends that the trial court erred when it denied her request for an order requiring Cody to pay her $100,000 to

10

finance the litigation.[4]  Maya argues that Family Code section 7605 requires the trial court to do a needs-based assessment of the parties' relative abilities to finance the litigation and to base its determination only on the parties' relative ability to finance the litigation and on no other factors.  Here, Maya claims, the trial court "assessed Maya's request under the statute applicable to a request for fees by a spouse in a dissolution proceeding."  The trial court therefore erred because "this is not a case in which Maya is seeking spousal support from Cody—and there is no statute or case law that directs a court to limit relief under section 7605 due to" a parent's domestic abuse.  We disagree with Maya's analysis.

In *Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, we concluded the trial court "did not err by taking into account standards and circumstances pertinent under a [Family Code] section 2032 comparative analysis.  By doing so, the court was able to perform a more thorough evaluation of the parties' respective abilities to pay." (*Id.* at p. 644.)  Contrary to Maya's contentions here, Family Code section 7605 does not require the trial court to simply mathematically determine which party has access to more resources and then redistribute those resources.  Section 7605 specifically allows the trial court the discretion to determine what is "reasonably necessary" under the facts and circumstances before it "for the cost of maintaining or defending the proceeding during the pendency of the proceeding."

When considering a request for attorney fees, "the trial court must determine what is just and reasonable under the circumstances, taking into consideration the parties' needs and

---

[4] Maya's request was initially for $50,000 in attorney fees. In her reply papers, she doubled her request to $100,000.

11

ability to pay *and the conduct of each party*." (*In re Marriage of Czapar* (1991) 232 Cal.App.3d 1308, 1319, italics added.) "[T]he proper legal standard for determining an attorney fee award requires the trial court to determine how to apportion the cost of the proceedings equitably between the parties under their relative circumstances. [Citation.] In making this determination, the trial court has broad discretion in ruling on a motion for fees and costs; we will not reverse absent a showing that no judge could reasonably have made the order, considering all evidence viewed most favorably in support of the order." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 975 (*Falcone*); *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 657, (*Winternitz*).) A party's "tactics are relevant to evaluate the relative need-based fees between the parties and support the trial court's decision to deny such . . . ." (*Falcone*, at p. 977.)

The portion of the trial court's order denying Maya's request for attorney fees states: "Respondent seeks an award of attorney fees of at least $100,000 (she originally sought $50,000). [Footnote.] Unfortunately, the papers do not clearly state how much of the total is allocated to the DVRO proceedings, the non-DVRO proceedings, and future proceedings. The emphasis in Respondent's papers is on [Cody]'s ability to pay the fees rather than the purpose of the fees. The papers do state that, as of the end of March 2017, [Maya] had incurred over $39,000 in attorney's fees on all matters.

"As for the fees that were incurred in connection with the DVRO proceedings, in which [Maya] did not prevail and is now restrained, Fam. Code §6344 authorizes an award of fees to the prevailing party in such proceedings [citation], but no law has been cited authorizing an award of fees to the losing, restrained

12

party.  The discussion in *In re Marriage of Cauley* (2006) 138 Cal.App.4th 1100 is instructive.  There, despite provisions in the judgment to the contrary, the court terminated support to an abusive spouse on the grounds that the protected party should not have to finance his own abuse.  [Citation.]  Given the statutory provision authorizing prevailing party fees but not the reverse, as well as the express requirement that domestic violence be considered in any award of fees (Fam. Code §§2030, 2032, and 4320 [footnote]), the Court finds that an award of fees *to* a restrained party for fees incurred in connection with that domestic violence proceeding would be contrary to the purposes of the Domestic Violence Protection Act.  Respondent's request for fees incurred in connection with the DVRO proceedings is denied.

"As for fees incurred in connection with other issues—[Maya]'s default, on her subpeonas which have been quashed, and on custody, visitation and child support, which have been denied—it is difficult to justify an award of fees in view of the Court's rulings on the merits of these issues.  As set forth in *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 251, [Maya] is not entitled to fees simply because her income is less than [Cody]'s.  [Citation.]  Deciding on a request for attorney's fees and costs requires the court to exercise its discretion based on a consideration of all the relevant factors.  Here the fees do not appear to have been incurred on necessary issues or in a reasonable manner and, in some instances, the fees were incurred in a way that increased the fees for all parties.  Requiring the opposing party to pay Respondent's fees under the circumstances presented by this case is not appropriate and the Court exercises its discretion to deny the request.

13

"As for the request for fees to be incurred in the future, all significant issues have already been ruled upon and it is difficult to see any future proceedings prior to the expiration of the restraining order that would be reasonable and necessary and that would bring total fees to $100,000. The Court finds that [Maya]'s request for attorney's fees for future non-DVRO matters is not supported by the facts and circumstances and should be denied."

Our review of the record confirms the trial court's observation that there is no clear allocation of the fees requested to either the DVRO proceedings, the non-DVRO proceedings, or future proceedings. Abboud attached her bills to Maya as evidence of attorney fees, but they offer no assistance in determining how much of any bill can be attributed to any part of the litigation.[5] In addition to a record incapable of supporting any request for attorney fees, the facts and circumstances of this case support the trial court's determination. Maya defaulted after Cody's attorneys requested three times that she file a response to Cody's petition. Rather than filing a response, Maya repeatedly sought ex parte relief to which she was not entitled, and did so with inappropriate litigation tactics, including filing declarations that were later flatly contradicted by other evidence and staging photographs to create evidence Maya believed would undermine Cody's petition. The record abounds with evidence

---

[5] On July 21, 2017, Maya moved to strike portions of Cody's designation of the record on appeal on the ground that Cody designated information Maya contends was improper for the trial court to consider when it decided the orders she has appealed. As noted, we do not agree that it was improper for the trial court to consider those other issues in the contexts it did so. We therefore deny Maya's motion to strike.

14

that neither Maya nor Abboud pursued litigation tactics that were either reasonable or necessary, but rather wielded aggressive litigation tactics as merely one part of a multi-faceted attack on Cody.

Here, the trial court considered the domestic abuse, Maya's litigation tactics, and the reasonableness and necessity of Maya's actions in the trial court, and came to a conclusion about "how to apportion the cost of the proceedings equitably between the parties under their relative circumstances." (*Falcone*, *supra*, 203 Cal.App.4th at p. 975.) Based on the record before us, and considering all of the evidence viewed most favorably in support of the trial court's order, Maya has not shown "that no judge could reasonably have made the order" denying attorney fees. (*Winternitz*, *supra*, 235 Cal.App.4th at p. 657.) The trial court here undertook the analysis required of it, and did not abuse its discretion when it denied Maya's request for attorney fees.

### 4. The Judgment

Maya does not address in her brief why the judgment should be reversed except that she believes it was entered based on her default. The trial court's order clarifies that it considered the merits of Maya's arguments "[b]ecause the best of interest of a minor child is involved . . . ." We have determined that the trial court did not abuse its discretion when it refused to set aside Maya's default. Even if it *were* error, however, we conclude that the trial court's consideration of Maya's arguments on the merits would render any error harmless. (See *People ex rel. City of Santa Monica v. Gabriel* (2010) 186 Cal.App.4th 882, 887.)

Additionally, the judgment tracks the trial court's previous orders. We have found no error in the trial court's entry of the orders upon which the judgment is based, and appellant has not

15

presented any independent basis for us to disturb the trial court's judgment.

## DISPOSITION

The trial court's judgment and orders are affirmed. The respondent is entitled to costs on appeal.

CERTIFIED FOR PUBLICATION

CHANEY, Acting P. J.

We concur:

BENDIX, J.

CURREY, J.*

---

*Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.