Filed 2/22/21  Marriage of Sangha CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of VREITI and GURPEET SANGHA. | D077062 |
| VREITI SANGHA, | |
| Appellant, | (Super. Ct. No. 18FL010015C) |
| v. | |
| GURPEET SANGHA, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Daniel F. Link, Judge.  Affirmed.

Law Office of Anthony J. Boucek and Anthony J. Boucek for Appellant.

Yelman & Associates, Tara L. Yelman and Sara R. Neumann for Respondent.

Vreiti Sangha appeals an order awarding Gurpeet Sangha $50,000 in interim attorney fees under Family Code[1] section 2030.  Vreiti maintains

---

[1]    Statutory references are to the Family Code unless otherwise specified.

that the trial court erred, as a matter of law, in failing to consider evidence of domestic abuse as a factor in making the award. She also argues the amount of the award is not supported by substantial evidence. We conclude Vreiti's claims do not have merit on the record before us. As such, we affirm.

FACTUAL AND PROCEDUARAL BACKGROUND

Vreiti and Gurpeet were married on August 18, 2001, and separated almost 17 years later. Vreiti filed a petition for dissolution of marriage on August 22, 2018. There has been no trial on that petition.

On May 17, 2019, Gurpeet filed a request for order for spousal support, attorney fees and costs, and monetary sanctions per section 271.[2] In his declaration supporting his request for order, Gurpeet stated that Vreiti earned a minimum monthly income of $46,130 and had $65,023 in her bank account, $6,559 in stocks and other assets, and $95,502 in real and personal property. Gurpeet also declared that he last worked in 2008 as a security guard and stated he could not work in the United States because of a restraining order against him. Gurpeet explained that he only had 39 cents in his bank account and obtaining a dentist license was cost prohibitive.

Gurpeet attached a copy of a domestic violence restraining order entered against him on May 21, 2018 in favor of Vreiti and the couple's two

---

[2] There is no indication in the record that the superior court has ruled on Gurpeet's motion for spousal support or sanctions. Because the sole issue before us involves the order awarding Gurpeet attorney fees, we limit our discussion of facts as to that issue only.

2

children (the Restraining Order). The Restraining Order expires May 22, 2022. However, in his declaration, Gurpeet claimed that the Restraining Order was "based on false allegations" and that he did not have the funds to hire an attorney to defend him against Vreiti's "false allegations."

Gurpeet also submitted an income and expense declaration as well as a fee declaration of counsel. He lodged at least 13 exhibits, but most of those exhibits were offered in support of his request for sanctions (which is not before us on this appeal). Gurpeet requested $70,000 in attorney fees and costs.

Vreiti opposed Gurpeet's request for attorney fees. She argued Gurpeet could obtain a job in the United States as a soccer coach or security guard. She also maintained that Gurpeet could work in Canada, where he is a citizen and his family lives. Vreiti also requested that the court take judicial notice of the Restraining Order.

In further support of her opposition, Vreiti submitted text messages between Gurpeet and her, photographs, an invoice for car repairs, tax filings, and an e-mail regarding her compensation.

In Vreiti's declaration, she emphasized that Gurpeet had "physically (as well as emotionally and financially) abused" her "[t]hroughout [their] 16-year marriage." Specifically, Vreiti discussed abusive events from 1995, 2003, 2005, 2006, 2007, 2008, 2010 through 2015, and 2018. She also disputed Gurpeet's characterization of her "lavish" vacations as well as her financial fitness before separation. She also maintained that Gurpeet could receive financial support from his "upper-middle class" parents.

In addition, Vreiti submitted the declaration of her sister-in-law, Aaina Ganotra. Ganotra declared that she heard Gurpeet threaten to kill Vreiti

and harm Ganotra's brother in law. Ganotra also corroborated Vreiti's allegation that Gurpeet had abused drugs.[3]

Vreiti submitted an income and expense declaration. She also filed a witness list that included five witnesses, besides herself, that all were to testify about "[d]omestic [v]iolence and [c]aregiving of [c]hildren."

In the memorandum of points and authorities in support of her opposition to Gurpeet's request for order, Vreiti focused on her claims of domestic abuse and argued that, under sections 2032 and 4320, she should not be required to pay Gurpeet any amount for his attorney fees.

In his reply, Gurpeet refuted Vreiti's allegations of domestic violence, claiming such allegations had never been adjudicated. He argued he was the actual victim of abuse and that Vreiti has sufficient funds to pay the requested fees. In support of his reply, Gurpeet submitted declarations from Dr. Shehma Khan and Jaswinder Chatha to, among other things, contradict some of Vreiti's allegations of domestic abuse. He also submitted a self-declaration in reply wherein he claimed to be the victim of "ongoing physical, verbal and emotional abuse throughout" the couple's marriage.

Each party lodged multiple objections to much of the evidence offered by the other party relating to Gurpeet's request for order. Vreiti additionally objected to Gurpeet's reply memorandum.

On July 31, 2019, the superior court held a hearing on Gurpeet's request for order. At the beginning of the hearing, the court addressed some of the parties' respective evidentiary objections. The court struck all third party declarations, which related to allegations of domestic violence on behalf

---

3    From our review of the record, it appears that Vreiti submitted other declarations from individuals to support her claims of domestic violence. However, Vreiti does not cite to these declarations in her briefs and does not otherwise explain their significance, if any.

of both parties. The court did not strike Gurpeet's reply but indicated that it would give "very little weight" to any new information contained in Gurpeet's reply declaration "because there's not a lot of corroboration to it."

Before argument, after both counsel mentioned domestic violence during their arguments about evidentiary issues, the court offered guidance regarding the impact of allegations of domestic violence on the court for purposes of determining whether interim attorney fees should be awarded:

> "Well, that's—your client—there is a protective order protecting petitioner [Vreiti]. A domestic violence hearing was held here and an order was made. That isn't changing. [¶] As far as to the specifics of that or any defense that goes to that, that, once again, doesn't have much value. [¶] Before I do hear your argument, I'll say this because this might help you in tailoring your arguments. [¶] We had— petitioner filed a domestic restraining order against respondent. Everyone—due process was had. A hearing was held and a significant restraining order—permanent restraining order was put into place for, I believe, four years and that had the desire effect of protecting the victim or the petitioner and the children that were on the restraining order. [¶] So that was a majority of the value the restraining order possesses. [¶] The Court does realize that when a domestic violence restraining order does go into effect, it has—has an effect on other things such as spousal support. Possibly attorney fees. I'm not sure in this case you're going to have a good argument for that."

Then after a brief discussion of some prior procedural issues, the court added: "I will listen to why you think domestic violence affects [section 2030 fees] specifically, but I think that has little to no bearing on the 2030 fees. [¶] Now, any further fees beyond that and spousal support very well may be a different story. But we're not there yet and I don't want to address that."

Gurpeet's counsel was first to argue, emphasizing that fees under section 2030 were mandatory to ensure that each party had access to legal

5

representation for purposes of a dissolution action. Counsel presented evidence regarding the finances of both parties and the reasons Gurpeet was entitled to $70,000 in attorney fees and costs.[4]

Toward the conclusion of her argument, Gurpeet's counsel asserted that the issuance of a domestic violence restraining order is not a bar to a request for attorney fees. Counsel also emphasized that Gurpeet had never been criminally convicted of domestic violence. And Gurpeet's counsel cautioned that she would be raising domestic violence issues at trial, stating that Gurpeet was a victim of abuse during the marriage.

In response, Vreiti's counsel began her argument by focusing on the domestic violence issue: "We are asking that the Court deny husband's request for attorney fees on the grounds that a victim of severe habitual physical violence should not be required to subsidize the cost of litigation necessary to pay for her abuser." After discussing how the case had been litigated, counsel returned to the domestic violence issue, arguing that it was "not appropriate to require a victim to pay the legal costs of her abuser." To this end, Vreiti's counsel insisted that, under sections 2030 and 2032, the court is to consider the amount of the attorney fee award that is "just and reasonable under the relative circumstances of the respective parties." Quoting section 4320, counsel added that " '[a]ll documented evidence of any history of domestic violence . . . between the parties or perpetrated by either party against either party's child is to be considered' " when determining whether attorney fees should be awarded.

---

[4] Because the parties are not disputing that Vreiti was the higher earner of the parties and they are not challenging the court's determination of need and ability to pay, we eschew a detailed discussion of the evidence presented by the parties regarding those issues. Instead, we focus primarily on the evidence of domestic violence, which Vreiti claims here was not considered by the court.

Counsel emphasized Vreiti had "testified that she suffered emotional distress from domestic violence . . . [and had] been diagnosed with posttraumatic stress disorder because of the domestic violence." After Gurpeet's counsel objected to these assertions, the court overruled the objection and commented:

> "That she's been diagnosed. No. She has the proper documentation. [¶] But as I stated earlier, I think that domestic violence and evidence thereof has a place. And clearly the Court is very—very careful on and sensitive to the fact of having a domestic violence victim pay anything to the person who caused the domestic violence. And I know that's disputed. However, there was a finding. [¶] And the Court has to decide how relevant it is to attorney[ ] fees. I don't think it has a lot of relevance to attorney[ ] fees. That's my position and its not changing. [¶] It's not to say that it won't have an effect somewhere else down the line, whether it be temporary spousal support or otherwise. But I'm not there yet and I'm not going to make any advisory rulings. [¶] But what it does—so I'm not sure I want petitioner to go into any more about the domestic violence because I'm aware of it. I've read the papers. I think it has some relevance at some point. It clearly had some relevance in protecting her and protecting the kids and it has that desired effect and she has that protection now. [¶] How it relates to an out-spouse, for lack of a better term, to properly represent himself in the division of assets is a completely different issue. [¶] So once again, I said it earlier and it's not to be insensitive, but looking at the law, I think the domestic violence here has little value when it comes to need and ability [to pay] attorney[ ] fees. [¶] So I do not want you to focus on domestic violence anymore. And the Court is well aware of it."

Despite the court's comments, Vreiti's counsel was not finished discussing domestic violence. She maintained the court should consider domestic violence when determining whether interim attorney fees should be awarded under section 2030. In response, the court again

7

tried to explain its approach to considering evidence of domestic violence in determining whether an award for interim attorney fees was warranted under the circumstances facing the parties:

> "And I'm saying it's not relevant. You're not saying that she incurred expenses or loss of income because of the [domestic violence]. You're saying the [domestic violence] happened and therefore I should take it into account. [¶] But you're not showing or connecting that relationship. You're not showing the nexus as to why need and ability attorney fees reflect on her ability to earn or—in fact, that argument has never been made. So that's why I'm not seeing the relevance."

Vreiti's counsel responded that domestic violence caused the breakdown of the parties' marriage and, without domestic violence, Vreiti "would never have had to incur any of these attorney fees had it not been for the need to escape her abuser." Counsel then implied that Gurpeet could have avoided incurring legal fees for the dissolution proceeding had he not abused Vreiti.

The court indicated that it believed domestic violence played a role in the need for a divorce but stated it was "sure there's a variety of reasons [why] she's leaving the marriage, whether he agrees with them or not." The court emphasized that the parties "still have to go through the process. And both sides are entitled to a proper defense, especially, if one is the higher wage earner."

The court then returned to the issue of domestic violence and explained why domestic violence was not going to prevent it from awarding attorney fees:

> "So I—once again, I think that's a bit of—it's a bit of a red herring. We can't just say domestic violence caused it,

8

since it was the whole cause of the marriage—or the dissolution of the marriage, because of that, she shouldn't have to pay a dime. [¶] The process still has to take place. Assets and debts unrelated to any domestic violence have to be divided. [¶] And therefore, domestic violence does have its place in other aspects of what we're going to do possibly, but not this."

Vreiti's counsel then discussed Gurpeet's lack of need for funds to pay for his attorney fees, but she later moved to admit into evidence exhibits 1 through 8. In the reporter's transcript, these exhibits are simply referred to as "Domestic Violence Related Documents." Except for exhibit 1, which was the Restraining Order, the other seven exhibits were not specifically identified or described at the hearing. The court indicated that it could take judicial notice of exhibit 1 "at the RFO after hearing" despite Gurpeet's counsel's objection that it was not relevant. Vreiti's counsel agreed with the court.

Gurpeet's counsel then indicated that she had objected to exhibits 1 through 8 on "foundation issues" and that they could not be authenticated. The court then stated that it would not receive exhibits 1 through 8.

At the conclusion of the hearing, the court awarded Gurpeet $50,000 in attorney fees and ordered Vreiti to provide half of a tax refund to Gurpeet.

In the Findings and Order After Hearing, the court indicated that it took judicial notice of the Restraining Order.

## DISCUSSION

As a threshold matter, we note that we are somewhat perplexed regarding how each party presents the primary issue before us. According to Vreiti, the superior court erred because it did not consider evidence of domestic violence in determining that attorney fees were justified under section 2030. In response, Gurpeet cautions us that if we follow Vreiti's

9

reasoning, we would fundamentally change the interpretation and purpose of section 2030. In other words, Gurpeet seems to suggest that a superior court cannot consider evidence of domestic violence in evaluating a request for interim attorney fees.

Yet, considering the record before us, we disagree with the parties' respective framing of the issue before us. The superior court allowed the parties to argue about the impact of domestic violence on Gurpeet's request for attorney fees. Although the court excluded some evidence that Vreiti claims demonstrated domestic violence, there was evidence of domestic violence before the court, notably Vreiti's declaration detailing the abuse she experienced during the marriage. In addition, the court took judicial notice of the Restraining Order. And, despite the evidence of domestic violence before it, the court still awarded Gurpeet attorney fees under section 2030.

So, this is not the case urged by Vreiti where a court refused to consider any evidence of domestic violence before awarding interim attorney fees. Nor does this case support Gurpeet's claim that consideration of evidence of domestic violence undermines the purpose of section 2030. Instead, this is a case where *both* parties submitted evidence of domestic violence and the court gave little weight to such evidence in determining that interim attorney fees should be awarded. As such, we view the main issue before us as a claim that the court abused its discretion in awarding a party interim attorney fees.

Section 2030 provides that the trial court "shall ensure that each party has access to legal representation . . . by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).)

10

"In determining the necessity of making such an award, the trial court must determine what award would be 'just and reasonable under the relative circumstances of the respective parties.' (§ 2032, subd. (a).) The factors to be considered in determining the relative circumstances of the parties include, to the extent relevant, those used for determining spousal support, enumerated in section 4320, including the catchall '[a]ny other factors the court determines are just and equitable.' (§ 4320, subd. (n); see § 2032, subd. (b).)" (*In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 533 (*Smith*).)

A trial court has wide discretion in awarding attorney fees under section 2030. Our review of an order awarding such fees is for an abuse of that discretion. (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 662.) "Applying the abuse of discretion standard, we consider de novo any questions of law raised on appeal, but will uphold any findings of fact supported by substantial evidence. [Citation.] The trial court's order 'will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made.' [Citation.]" (*Smith*, *supra*, 242 Cal.App.4th at p. 532.)

Here, Vreiti claims the superior court improperly "refus[ed] to consider documented and testimonial evidence of domestic violence in its consideration of her abuser's request for an interim award of attorney[ ] fees pursuant to [section 2030]." In this sense, she argues the court made an evidentiary error: It improperly excluded specific documentary and testimonial evidence. Indeed, this framing becomes clearer in the questions presented section of the opening brief. Vreiti presents the salient issues as follows:

> "A. Does a trial court err as a matter of law in refusing to consider documented history of domestic violence when

11

making an award of interim attorney[ ] fees in light of recent amendments to the applicable statutes?

"B. Does a trial court abuse its discretion in excluding documented evidence of a history of domestic violence when making an award of interim attorney[ ] fees in light of recent amendments to the applicable statutes?

"C. As a matter of statutory interpretation, must documented evidence of a history of domestic violence demonstrate an adverse impact on the victim's finances in order to be relevant for consideration?"

Thus, as Vreiti represents the errors for us to consider, it appears the superior court excluded certain testimonial and documentary evidence of domestic violence. As such, we would expect the opening brief to cite to the record where the evidence was excluded, cite to the actual evidence, discuss the evidence in detail to allow us to understand what was being offered below, and provide cogent legal authority to support Vreiti's position. Nevertheless, the opening brief is lacking in these respects.

It is an appellant's duty to support arguments in his or her briefs by references to the record on appeal, including citations to specific pages in the record. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) "Appellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 (*Nelson*); see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 (*Malibu Hillbillies*) [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' "].)) "We are not bound to develop appellants' arguments for

12

them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone*); see *Malibu Hillbillies*, at p. 146.)

Although Vreiti claims the superior court excluded testimonial evidence, she provides no citation to the record to support her position.  In reviewing the record, we found a witness list she submitted.[5]  However, it is not clear that she attempted to call any witnesses at the subject hearing or that the court prohibited her from doing so.  In our review of the record, we discovered that the court excluded declarations from third parties offered by Vreiti as well those offered by Gurpeet.  Yet, Vreiti does not provide any citations to the record identifying these declarations.  Nor does she discuss the content of these declarations or explain why they should have been admitted.  These shortcomings waive her claim the superior court erred in excluding testimonial evidence of domestic violence.  (See *Malibu Hillbillies*, *supra*, 36 Cal.App.5th at p. 146; *Nelson, supra,* 172 Cal.App.4th at p. 862; *Falcone, supra,* 164 Cal.App.4th at p. 830.)

Vreiti's argument about documentary evidence is no better presented.  Although she does cite to the record where eight exhibits (exhibits 1-8) were not received by the court, she does not cite to where the actual exhibits exist in the record.  Nor does Vreiti describe these documents in any sort of detail or explain why they should have been admitted beyond her assertion that they are documented evidence of domestic violence.

In the reporter's transcript, exhibits 1 through 8 are merely referred to as "Domestic Violence Related Documents."  That said, it is clear from the context that exhibit 1 is the Restraining Order.  The rest of the exhibits are

---

5      We note that Vreiti does not cite to the witness list in her opening brief.

13

not sufficiently described in the reporter's transcript or the opening brief to explain what each exhibit contains. The court excluded the exhibits on the ground they were "not relevant." In addition, Gurpeet objected to these exhibits for additional reasons, including hearsay and lack of authentication. However, the court took judicial notice of the Restraining Order.

In reviewing the record, we believe we have located exhibits 2 through 8. They consist of text messages between Vreiti and Gurpeet, photographs, and an estimate for repairs to a vehicle. However, without additional explanation, we cannot ascertain with any certainty how each exhibit documents a history of domestic violence as Vreiti claims. In other words, Vreiti has failed to satisfy her burden of citing to the record and providing cogent legal argument that the court erred in excluding exhibits 2 through 8. As such, she has waived these arguments on appeal. (See *Malibu Hillbillies*, *supra*, 36 Cal.App.5th at p. 146; *Nelson*, *supra*, 172 Cal.App.4th at p. 862; *Falcone, supra,* 164 Cal.App.4th at p. 830.)

Vreiti's failure to sufficiently cite to the record and provide legal authority is all the more damaging to Vreiti's arguments here when we consider the evidence that was before the court. Among other things, the court admitted evidence of domestic violence. For example, in Vreiti's declaration, she stated that Gurpeet had abused her during their entire marriage; she suffers from emotional distress and panic attacks because of the abuse; she has been diagnosed with posttraumatic stress disorder; and Gurpeet was verbally and physically abusive and controlling. Also, the court took judicial notice of the Restraining Order.

In addition, Gurpeet offered evidence that he suffered from domestic violence as well. In his reply declaration, he asserted that "Vreiti . . . was a perpetrator of domestic violence against [him] with ongoing physical, verbal

14

and emotional abuse throughout [their] marriage." He also provided further details of the alleged abuse in his declaration. Vreiti objected to Gurpeet's reply declaration and the statements of abuse in it, but the court overruled the objection, noting the "new information . . . has very little weight because there's not a lot of corroboration to it. So the Court is going to provide the appropriate weight to the new statements that came out in the reply declaration."

Thus, on the record before us, it is clear that the court admitted some evidence of domestic violence. Accordingly, this is not a case, as suggested by Vreiti, where a court excluded all evidence of domestic violence. Instead, the court admitted some such evidence, gave it little weight in awarding interim attorney fees, but cautioned the parties that evidence of domestic violence could play a greater role in later proceedings. And we cannot reweigh the evidence that was before the superior court. (See *Darab Cody N. v. Olivera* (2019) 31 Cal.App.5th 1134, 1141 (*Darab Cody*) [" ' "we do not reweigh evidence or reassess the credibility of witnesses" ' "].)

Although the shortcomings we have identified in the opening brief are sufficient grounds on which to affirm the superior court's order, we also address an additional argument Vreiti advanced at the hearing below and suggests in her briefs here. At the hearing, Vreiti's counsel forcefully implied that the court could not award interim attorney fees in favor of Gurpeet because of evidence of past domestic violence: "We are asking the Court deny husband's request for attorney fees on the grounds that a victim of severe habitual physical violence should not be required to subsidize the cost of litigation necessary to pay her abuser." The opening brief echoes this argument, relying on a recent amendment to subdivision (i) of section 4320,

15

implying that evidence of domestic abuse prohibits a superior court from awarding interim attorney fees to an abuser under section 2030.[6]

We agree that subdivision (i) requires a court to consider documented evidence of any history of domestic violence in ordering spousal support (see § 4320, subd. (i)) and section 2032, subdivision (b) instructs a court to consider the circumstances of the respective parties described in section 4320 when making an award of attorney fees under section 2030. However, nothing in sections 2030, 2032, or 4320 support the position that documented evidence of a history of domestic abuse absolutely prohibits a court from awarding interim attorney fees. Further, Vreiti acknowledges there is no authority "directly addressing the effect of the amendments to [section] 4320[, subdivision] (i) on the trial court's discretion to award fees (interim or final) pursuant to [section] 2032." Nevertheless, she maintains that *Darab Cody, supra*, 31 Cal.App.5th 1134 provides some guidance on the issue. However, that case is not helpful to Vreiti's position.

In *Darab Cody, supra*, 31 Cal.App.5th 1134, the mother, among other things, challenged an order denying her request that the father pay her $100,000, under section 7605, to finance the litigation. The mother claimed section 7605 required the superior court to conduct a needs-based assessment for fees and base its determination only on the parties' relative ability to

_____

[6] However, during oral argument, Vreiti's counsel clarified Vreiti's position. He explained that Vreiti was not arguing that the court could not award attorney fees to Gurpeet under section 2030 because of evidence of past domestic violence. Instead, counsel made clear Vreiti's primary argument was that the superior court did not consider any evidence of domestic violence. For the reasons stated *ante*, we reject this contention. The court considered evidence of domestic violence but did not give it much weight. As Vreiti's counsel agreed, Vreiti is not asking this court to reweigh the evidence, which we could not do in any event. (See *Darab Cody, supra,* 31 Cal.App.5th at p. 1141.)

finance the litigation and on no other factors. (*Darab Cody*, at p. 1142.) The mother specifically took issue with the superior court's consideration of a domestic violence restraining order (DVRO) that was entered against her for the benefit of the father and their child. (*Ibid*.) The appellate court noted that it was appropriate for the superior court to evaluate the issue of attorney fees awarded pursuant to section 7605 under the same circumstances pertinent to a similar evaluation under section 2032. (*Darab Cody*, at pp. 1142-1143.)

In denying the mother's request for $100,000 in attorney fees, the superior court observed: " 'Unfortunately, the papers do not clearly state how much of the total is allocated to the DVRO proceedings, the non-DVRO proceedings, and future proceedings.' " (*Darab Cody*, *supra*, 31 Cal.App.5th at p. 1143.) The superior court further noted that the mother had lost in the DVRO proceedings, and there was no law authorizing fees to the losing, restrained party. (*Ibid*.) Additionally, the court found " 'that an award of attorney fees <u>to</u> a restrained party for fees incurred in connection with that domestic violence proceeding would be contrary to the purposes of the Domestic Violence Protection Act.' " (*Id*. at pp. 1143-1144.) However, the court did not conclude that the fact a DVRO had been entered against the mother operated as a per se ban to the mother from obtaining attorney fees related to other portions of the litigation. Instead, the superior court determined that attorney fees to the mother for non-DVRO issues were not warranted for other reasons, not related to the issuance of the subject DVRO. Indeed, the court found that the mother was not entitled to attorney fees incurred in connection with other issues based on the court's rulings on the merits of those issues. The superior court explained: " 'Here the fees do not appear to have been incurred on necessary issues or in a reasonable manner

17

and, in some instances, the fees were incurred in a way that increased the fees for all parties.' " (*Id*. at p. 1144.)  Moreover, the superior court found that the mother's request for attorney fees for future litigation was " 'not supported by the facts and the circumstances and should be denied.' " (*Ibid*.)

The appellate court concluded that the record confirmed "the trial court's observation that there is no clear allocation of the fees requested to either the DVRO proceedings, the non-DVRO proceedings, or future proceedings." (*Darab Cody*, *supra*, 31 Cal.App.5th at p. 1144.)  The court further determined that the record was "incapable of supporting any request for attorney fees" and "the facts and circumstances of this case support the trial court's determination." (*Id*. at p. 1145.)

Here, there are no facts that are analogous to the situation in *Darab Cody*.  Gurpeet is not seeking attorney fees for the DVRO proceeding wherein he lost and was restrained.  And Vreiti, except for the limited substantial evidence challenge we discuss below, is not challenging any of the facts or circumstances relied on by the court in awarding Gurpeet fees.  Thus, *Darab Cody* does not support Vreiti's position in the instant action.

Finally, in almost a throwaway argument, Vreiti argues the amount of attorney fees awarded to Gurpeet is not supported by substantial evidence.  To this end, Vreiti maintains the court did not admit into evidence Gurpeet's exhibits M and Y, which both contained billing invoices from Gurpeet's attorney.  In other words, Vreiti argues the only evidence submitted by Gurpeet to support an award of $50,000 were exhibits M and Y.  This argument ignores both the rest of the evidence Gurpeet submitted and the deferential substantial evidence standard of review we must apply.

In applying the standard of review of substantial evidence, we imply all necessary findings supported by substantial evidence (*Berman v. Health Net*

18

(2000) 80 Cal.App.4th 1359, 1364; *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 991) and "construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance." (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946.) "If more than one reasonable inference may be drawn from undisputed facts, the substantial evidence rule requires indulging the inferences favorable to the trial court's judgment. [Citations.]" (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211.) We are required to accept all evidence that supports the successful party, disregard the contrary evidence, and draw all reasonable inferences to uphold the verdict. Credibility is an issue of fact for the finder of fact to resolve (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622), and the testimony of a single witness, even that of a party, is sufficient to provide substantial evidence to support a finding of fact (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614).

Here, in Gurpeet's declaration, he requested $70,000 in attorney fees. He represented that he had borrowed $30,000 from his brother to pay for incurred attorney fees and costs. Gurpeet also stated that he owed his attorney $13,593.82. Those two amounts added together are close to the $50,000 awarded by the court. In addition, Gurpeet's attorney submitted a declaration detailing her hourly rate (as well as the rates of other attorneys in her firm), the work she had performed on behalf of Gurpeet, and the work she anticipates performing in representing Gurpeet in the future. Counsel also confirmed the amount of attorney fees requested by Gurpeet. This evidence is more than sufficient to support the court's determination that the amount of $50,000 in attorney fees was warranted.

In summary, we determine there was no abuse of discretion. The court considered evidence of domestic violence brought by both parties, gave it little

weight, and determined that, "to ensure each party has access to legal representation," an award of $50,000 to Gurpeet was appropriate. (See § 2030, subd. (a)(1).) Moreover, Vreiti does not challenge the court's determination of need or ability to pay. On the record before us, we cannot say "no judge could reasonably make the order made." (*Smith*, *supra*, 242 Cal.App.4th at p. 532.)

## DISPOSITION

The order is affirmed. Gurpeet is entitled to his costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.