Filed 4/29/22  Douglas S. v. Jennifer E. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DOUGLAS S., | |
| Plaintiff and Respondent, | G059942 |
| v. | (Super. Ct. No. 10P001296) |
| JENNIFER E., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Nathan T. Vu, Judge.  Affirmed in part, reversed in part and remanded.

Holstrom, Block & Parke and Ronald B. Funk for Defendant and Appellant.

Hellmann Law Group and Lawrence Hellmann for Plaintiff and Respondent.

INTRODUCTION

The present appeal is one of two before us relating to an ongoing parenting conflict between the parents of a 12-year-old boy. Said litigation is the subject of a companion appeal, *Douglas S. v. Jennifer E.*, case No. G058880 (the companion case), for which we have written a separate opinion.[1] This appeal is significantly narrower in scope than that one. Here we must determine whether the family law court erred in denying appellant's request for a contribution by the respondent toward her attorney fees and costs so she can mount the companion case's appeal. She also seeks fees and costs to help her bring claims under the Domestic Violence Prevention Act (DVPA). We conclude the trial court was within its discretion to deny appellant's request for attorney fees for the appeal, but we reverse and remand its ruling on the DVPA issue for further consideration.

## FACTS

Appellant Jennifer E. and respondent Douglas S. are the parents of the boy and have been involved in a contested parentage action since 2010. In December 2015, the two began a protracted battle over modifications to custody and child support for the son.

On October 28, 2020, almost a full year after the last of the above-referenced child support and custody modification orders had issued in December 2019, Jennifer filed a request for order (RFO) seeking attorney fees and costs. She scheduled it for hearing on December 4, 2020.

Jennifer wanted Douglas to pay $60,000 total in attorney fees. $50,000 of that amount was to retain appellate counsel on the appeal in the companion case. In support of this request, she submitted the declaration of a certified appellate specialist, Herb Fox, who stated there were reasonable grounds for appeal based on Family Code

---

[1] Our opinion in the companion case provides the factual background on the litigation from December 2015 to December 2019, and we do not resummarize it here.

section 3044[2] issues, and $50,000 was a reasonable estimate of the total fees needed to prosecute the appeal.

The other $10,000 in requested attorney fees were to retain counsel to assist Jennifer in "prosecut[ing] the latest acts of domestic violence and violations of the DVRO . . . as well as correct errors" in the trial court's order issued on October 6, 2020. She also wanted him to pay her $5,000 in costs for computer forensics work and subpoenas because she believed Douglas had hacked into her personal laptop. She filed a declaration claiming she had found that Douglas' e-mail address was signed into her computer applications. She had consulted with several computer services and found it would likely cost somewhere close to $1,000, if not more, to figure out what applications Douglas' e-mail address was using and what he had accessed. Because the court had previously determined Douglas made significantly more income than Jennifer, she requested an advance of $15,000 in attorney fees and costs under sections 2030 and 7605.

Douglas opposed Jennifer's request for attorney fees, calling it "frivolous, speculative, redundant and vexatious." He acknowledged his monthly income was nearly $24,000 per month, but he said Jennifer had the ability to pay her own attorney fees. Two days prior to the hearing on Jennifer's RFO, Douglas sought a week's continuance to allow him to consult counsel. Finding good cause, the court rescheduled the hearing to January 29, 2021.

Jennifer filed an income and expense declaration on January 27, 2021, stating she was unable to work due to the COVID-19 pandemic and was collecting an average of $1,900 per month in unemployment benefits. She was heavily in debt.

The January 29 hearing was held via videoconference. Douglas appeared in propria persona, whereas Jennifer appeared through counsel (who is also now her

---

[2] All further statutory references are to the Family Code.

3

appellate counsel). The court took the matter under submission, and the same day issued a detailed ruling denying Jennifer's RFO under sections 2030, 7605, and 6344.

## DISCUSSION

"When considering a request for attorney fees, 'the trial court must determine what is just and reasonable under the circumstances, taking into consideration the parties' needs and ability to pay *and the conduct of each party*.' (*In re Marriage of Czapar* (1991) 232 Cal.App.3d 1308, 1319, italics added.) '[T]he proper legal standard for determining an attorney fee award requires the trial court to determine how to apportion the cost of the proceedings equitably between the parties under their relative circumstances. [Citation.] In making this determination, the trial court has broad discretion in ruling on a motion for fees and costs; we will not reverse absent a showing that no judge could reasonably have made the order, considering all evidence viewed most favorably in support of the order.' (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 975 (*Falcone*); *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 657 . . . .) A party's 'tactics are relevant to evaluate the relative need-based fees between the parties and support the trial court's decision to deny such . . . .' (*Falcone*, at p. 977.)" (*Darab Cody N. v. Olivera* (2019) 31 Cal.App.5th 1134, 1143; *Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734 [fee reduction for over-litigation and incivility].)

Here, the trial court took up and carefully considered whether any of the three statutes – sections 2030, 6344, or 7605 – supported the award Jennifer was requesting. Sections 2030 and 7605 are very similar in that both require the trial court to ensure both parties in a family law proceeding have "access to legal representation" in order "to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§§

4

7605, subd. (a); 2030, subd. (a)(1).)  However, as the trial court correctly remarked, section 2030 applies in marital or legal separation proceedings – which the present case is not.  (§ 2030, subd. (a)(1).)  Thus, section 2030 is not a proper legal basis for Jennifer's request.

Section 6344 is a part of the DVPA and allows prevailing party attorney fees and costs in domestic violence restraining order (DVRO) and protective order proceedings.  (*Id.,* subd. (a).)  Jennifer has included no evidence in the record before us to indicate she prevailed in a DVRO proceeding other than the one addressed in the companion case (for which she was already awarded attorney fees).

Thus we are left with section 7605.  "When a request for attorney's fees and costs is made under this section, the court shall make findings on whether an award of attorney's fees and costs is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties.  If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs.  A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward."  (*Id.,* subd. (b).)

Jennifer contends the trial court "simply disregarded" the above analysis with respect to her appellate fees.  Not true.  In its final ruling, the trial court stated: "The Court considers whether there is a disparity in access to funds and an ability to pay. While there is a disparity in the parties' incomes in that Petitioner earns more than Respondent, Petitioner's income is not so large that he has the ability to pay from his income.  In fact, considering Petitioner's income, liquid assets, and needs, the Court finds that the Petitioner does not have the ability to pay $50,000 in attorney's fees to Respondent."

The trial court also considered whether Jennifer's appeal was reasonable and brought in good faith. Jennifer contends the trial court took this inquiry too far – essentially requiring that she show a likelihood of prevailing on the appeal. But the ruling does not reflect this. The trial court concluded neither Jennifer nor Mr. Fox had articulated a "specific error[]" that would require reversal. Indeed, both Jennifer and Mr. Fox, in their declarations, stated the appeal had a meritorious basis. Mr. Fox predicted the trial court's application of section 3044's domestic violence presumption could be seen as erroneous. But he never went further in explaining how. And as our opinion in the companion case demonstrates, errors do not always require reversal. We see no abuse of discretion in the trial court's insistence that Jennifer point out a putative reversible error – or at least a suggestion of what mistake the court had made in its application of section 3044 – providing a good faith basis for appeal.

Jennifer is, however, correct in arguing that it was improper for the trial court to conclude she could not seek fees under section 7605 in order to prosecute claims under the DVPA. Because section 7605 applies to "any proceeding to establish physical or legal custody of a child or a visitation order . . . in any proceeding subsequent to entry of a related judgment," the trial court reasoned it could not award her attorney fees for purposes of pursuing a DVPA claim. (§ 7605, subd. (a).)

We find the trial court's interpretation of section 7605 too restrictive. As the First District Court of Appeal concluded in the recent case of *C.T. v. K.W.* (2021) 71 Cal.App.5th 679 (*C.T.*), section 7605 can apply to separate DVPA proceedings so long as they are "related" to the parentage action; that is, where the "subject matter of both cases is clearly the same or similar." (*C.T.*, *supra*, 71 Cal.App.5th at p. 685.) "In *N.S. v. D.M.* [(2018)] 21 Cal.App.5th [1040,] 1055, the court explained that '[i]n keeping with its statutory purpose, "the most obvious function of the 'related' proceeding language is to allow a trial court to fully ensure both parties' ability to maintain or defend a [family law action]." [Citation.] Two suits might be "'related'" if they "involve the same or similar

6

subject matter" as the family law action and could have been part of that action. [Citations.] . . . Another way two suits might be "related" is if the separate civil suit intends an *effect* on the family law action.'" (*C.T.*, *supra*, 71 Cal.App.5th at p. 684.)

Jennifer's claims under the DVPA would relate to potential surveillance of her internet activity and/or hacking of her personal computer by Douglas.[3] Such allegations could easily be heard by the trial court as part of the parentage case, because they could impact custody.[4] Thus, DVPA proceedings would be related for purposes of section 7605.

Having established that, the next step in the process is to apply subdivision (b) of section 7605: determining whether there is an income disparity and whether one party has the ability to pay both sides' fees and costs for any new DVPA claims by Jennifer. Here, the trial court never considered whether Douglas might have the ability to pay *some* amount to assist Jennifer in at least investigating what had occurred. It called her evidence "flimsy," which is why the assistance of forensic computer experts would be required to solidify it. Based on her declaration and exhibits, Jennifer had gathered reasonable estimates for the work involved, which, on their face, do not seem unreasonable. The trial court therefore applied an unduly restrictive legal analysis to the DVPA issues. We reverse the ruling as to the DVPA issue only, and remand to the trial court to conduct a fuller analysis of fees and costs pertaining to that issue under section 7605, subdivision (b). We offer no opinion on the outcome of that analysis.

---

[3] The trial court's ruling makes reference to other violations of the DVRO alleged by Jennifer, but there is no further elaboration in the record about them.

[4] As we explain in the companion case, section 3044 provides a presumption against awarding custody to a perpetrator of domestic violence.

# DISPOSITION

The order is reversed and remanded to the trial court for further proceedings to determine if appellant should be awarded attorney fees and costs under section 7605, subdivision (b) for prosecution of DVPA claims only.  Each party is to recover one-half of his or her costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOORE, J.

ZELON, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.